**Donald D. CONKLIN, Employee, by Charlene JOHNSON–CONKLIN, Spouse, Petitioner–Appellant,**

v.

**MacMILLAN OIL COMPANY, Employer, U.S. Fidelity & Guaranty Co., Insurance Carrier, Respondents–Appellees.**

No. 95–1712.

Court of Appeals of Iowa.

Oct. 25, 1996.

David S. Wiggins of Wiggins, Anderson & Conger, P.C., West Des Moines, for petitioner–appellant.

Stephanie L. Glenn of Grefe & Sidney, P.L.C., Des Moines, for respondents–appellees.

Heard by SACKETT, C.J., and HABHAB and VOGEL, JJ.

SACKETT, Chief Judge.

Petitioner-appellant Charlene Johnson–Conklin claimed to be the common-law wife

of Donald Conklin, who was killed while in the employ of respondent-appellee MacMillan Oil Company. Her petition seeking spousal death benefits was denied by the industrial commissioner, who found she failed to prove she was a common-law wife. On appeal, the district court affirmed the commissioner. This appeal follows. Charlene claims the industrial commissioner erred in failing to recognize a presumption of a common-law marriage on which she claims she can rely. We disagree and affirm the district court and the commissioner.

Donald Conklin and Charlene Johnson were married in 1974. They have three children. Their marriage was dissolved in 1985. At that time Charlene began using her maiden name of Johnson. She did not use the name "Johnson–Conklin" until Donald's death in March 1992.

In 1987, Charlene and Donald moved with their children to a rented home in Des Moines, Iowa. Except for three months in late 1989 and early 1990, they lived there together until Donald's death. They shared the same bedroom. They engaged in sexual relations. They shared household chores and the responsibility of raising their children. They were not remarried in a legal ceremony. There was evidence at times they indicated they were husband and wife. There also was evidence Donald made it clear to his co-employees, although he lived with Charlene and they had been married at one time, they no longer were married. Donald showed on an enrollment form for medical benefits Charlene was his spouse, but he showed his marital status as divorced.

After the dissolution, Charlene filed her income tax returns as a single person or as head of the household. When she leased the home where they lived at the time of Donald's death, she showed on the lease Donald was her former husband. In 1988, Charlene listed Donald the same way when she named him as one of the beneficiaries on her life insurance. In 1990, she applied for public assistance and showed Donald as absent from her children and listed herself as divorced.

Appellee-insurer United States Fidelity & Guaranty Company is paying workers' compensation death benefits to Donald's dependent children. Charlene filed a claim as a surviving spouse for death benefits with the industrial commissioner. She claimed a common-law marriage to Donald from 1987 to his death. A deputy commissioner entered an arbitration decision finding Charlene the common-law wife of Donald and due death benefits.

On the appeal by MacMillan Oil Company and United States Fidelity & Guaranty Company, the industrial commissioner filed a decision finding Charlene had not established she was Donald's common-law wife when he died. The commissioner found, although Charlene proved a continuous cohabitation, she failed to show declaration of the marriage and the present intent for such a marriage.

Charlene filed a petition for judicial review claiming the commissioner's ruling was not supported by substantial evidence and was affected by an error of law. The district court entered a decision affirming the commissioner's decision. The court determined there was substantial evidence supporting the commissioner's determination. This appeal follows.

Charlene raises one issue on appeal. She contends the commissioner misapplied the law in failing to hold a common-law marriage was presumed and she could rely upon that marriage. MacMillan Oil claims Charlene did not assert in proceedings before the commissioner her claim she was entitled to a presumption of a common-law marriage. MacMillan Oil claims this issue was not preserved for review. It further argues Charlene is not entitled to a presumption of a common-law marriage and the commissioner correctly found she had failed to prove by clear and convincing evidence she and Donald were married by common law.

We address Charlene's contention there is a presumption of common-law marriage under Iowa law and the commissioner did not properly consider it in weighing the evidence presented.

 Iowa recognizes the validity of common-law marriages. *In re Estate of Fisher,*

176 N.W.2d 801, 805 (Iowa 1970). When one party is deceased, the party asserting the marriage must prove the elements of a common law marriage by a preponderance of clear, consistent, and convincing evidence. *Id.; see also State v. Ware,* 338 N.W.2d 707, 711 (Iowa 1983).

The three elements necessary to find a common-law marriage are: (1) present intent and agreement to be married; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife. *In re Marriage of Winegard,* 278 N.W.2d 505, 510 (Iowa 1979). The burden of proof is with the party asserting the existence of a common-law marriage. *Id.* A claim of common-law marriage is regarded with suspicion and is closely scrutinized. *In re Marriage of Grother,* 242 N.W.2d 1, 1 (Iowa 1976). No public policy favoring common-law marriages exists in Iowa. *In re Marriage of Reed,* 226 N.W.2d 795, 796 (Iowa 1975); *Fisher,* 176 N.W.2d at 804.

Proof of cohabitation, as well as evidence of conduct and general repute in the community where the parties reside, tends to strengthen the showing of present agreement to be husband and wife, as well as bearing upon the question of intent. *Gammelgaard v. Gammelgaard,* 247 Iowa 979, 980, 77 N.W.2d 479, 480 (1956); *In re Marriage of Gebhardt,* 426 N.W.2d 651, 652 (Iowa App. 1988). Circumstantial evidence may be relied upon to demonstrate a common-law marriage. *Fisher,* 176 N.W.2d at 806; *State v. Lawson,* 165 N.W.2d 838, 839 (Iowa 1969); *In re Estate of Malli,* 260 Iowa 252, 256, 149 N.W.2d 155, 158 (1967). A continuous cohabitation of the parties and the declaration or holding out to the public they were, in fact, husband and wife constitutes circumstantial evidence which tends to create a fair presumption that a common-law marital relationship existed. *In re Marriage of Winegard,* 257 N.W.2d 609, 617 (Iowa 1977).

1. This is no less true by current standards.

A person may be entitled to marital rights if his or her intention is to be married, even though the other person's intention is not the same, provided they cohabit and provided the conduct of one person justifies the other to believe he or she intended to be married. *Winegard,* 257 N.W.2d at 616 (citing *McFarland v. McFarland,* 51 Iowa 565, 570, 2 N.W. 269, 273–74 (1879)). Contrary to Charlene's assertion, these holdings do not establish a presumption in favor of common-law marriage.

Charlene showed a nearly continuous cohabitation. This evidence was not disputed. Clearly cohabitation does not of itself constitute marriage. *McFarland v. McFarland,* 51 Iowa 565, 570, 2 N.W. 269, 273–74 (1879).[1] An element essential to the proof of such relationship is a general and substantial "holding-out" or open declaration to the public by both parties. *In re Estate of Dallman,* 228 N.W.2d 187, 190 (Iowa 1975). In fact, such "holding-out" or open declaration to the public has been said to be the acid test. *Id.* "In other words, there can be no secret common-law marriage." *Id.*

The commissioner found Charlene did not intend to be married by common law and the commissioner found Charlene failed to prove there was a public declaration of the marriage. There is substantial evidence in the record to support both conclusions. The commissioner and the district court must be affirmed. *See Manpower Temporary Servs. v. Sioson,* 529 N.W.2d 259, 262 (Iowa 1995).

**AFFIRMED.**