IN RE ESTATE OF DAVID S. SCHENCK, DECEASED.
JOYCE BARNES, APPELLANT, V. NANCY M. SCHROEDER, PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID S. SCHENCK, APPELLEE.
568 N.W.2d 567

Filed May 27, 1997.    No. A-96-188.

Larry R. Forman and Leigh A. Rademacher, of Dixon Dixon & Jessup Ltd., L.L.P., for appellant.

Dean J. Jungers, of Hascall, Jungers, Garvey & Delaney, for appellee.

IRWIN, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

The issue in this appeal is whether the evidence in the record supports the decision of the county court for Douglas County that no common-law marriage existed under Iowa law between Joyce Barnes and David S. Schenck, a decision which denied Joyce any interest in David's estate.

## FACTUAL BACKGROUND

The decedent, David S. Schenck, began dating Joyce Barnes, a resident of the State of Iowa, in late 1982. In 1985, after a 2½-year courtship, David moved from his home on South 20th Street in Omaha, Nebraska, to reside with Joyce in her mobile home in Carter Lake, Iowa. While residing in Carter Lake, the couple purchased a 1984 Lincoln automobile, which was financed in both their names. David continued to own his home in South Omaha while living with Joyce in Iowa. He kept a separate checking account, continued to register his truck in Nebraska, and maintained a post office box in Omaha.

While the couple lived in Carter Lake, David began experiencing health difficulties. David faced his first problem, addiction to alcohol, by attending a couples' group session with Joyce. She attended as David's "significant other." Other health concerns followed. In July 1989, David suffered the first of two strokes. He was taken to St. Joseph's Hospital. Joyce checked him in and designated herself as "friend. Significant other." Joyce was David's constant companion during his struggle with alcohol and his recovery from the stroke. It was also in 1989 that David executed a deed of trust to Norwest Bank for his Omaha property, which indicated on the certificate that he was "single."

While the couple resided in Iowa, some friends and relatives held the general opinion that David and Joyce were married. These opinions were formed when David and Joyce would introduce the other as his wife or her husband. David's sister, Delphine Castillo, in fact, introduced the couple as husband and wife and often referred to Joyce as her sister-in-law. The couple rarely declared to others that they were in fact "married," but,

conversely, they rarely denied that they were husband and wife. However, in 1989, David did tell a former girl friend that he was not married to Joyce. In the same conversation, he indicated he had no intention of marrying Joyce. That same year, David also told his nephew he was not married to Joyce.

In September 1990, approximately 5 years after moving into Joyce's mobile home together, the couple decided to reside at David's South Omaha address. Joyce sold her mobile home 2 years later. The proceeds went to pay joint expenses. The sale also financed a Mercury sedan, jointly titled and financed. Although the couple were financing cars together, they were not paying federal or state taxes as a married couple. David prepared his 1992 and 1993 income tax returns designating himself as "single." His 1994 return, which incidentally was prepared by Joyce, also designated David as "single."

In 1994, David suffered his second stroke. Because of this stroke, David was sent to a long-term nursing home in Clarinda, Iowa. David remained at the Clarinda facility until his death on May 16, 1995. In preparing David for burial, Joyce informed the mortician that she was David's "significant other." She received $26,000 as the sole beneficiary of David's life insurance policy.

## PROCEDURAL BACKGROUND

Upon the death of their brother, David, Nancy M. Schroeder and Castillo applied to the county court for Douglas County, Nebraska, for the informal appointment of a personal representative of their brother's estate in intestacy. Schroeder was named personal representative. Joyce petitioned the court to establish her intestate share of David's estate, as his surviving spouse, and to determine any heirs. Schroeder asked that Joyce be denied the status of surviving spouse and that the court decree that Schroeder and Castillo were David's sole heirs.

The county court determined that Joyce was not the common-law wife of David and was not entitled to an intestate share of his estate as such. The county court applied the three-part test for common-law marriage found in *In re Marriage of Gebhardt*, 426 N.W.2d 651 (Iowa App. 1988). The test in *In re Marriage of Gebhardt* requires a petitioner to prove (1) a present intent

and agreement to be married, (2) continuous cohabitation, and (3) a public declaration that the parties are husband and wife. The county court found that the most important factor to demonstrate was that the parties intended to be husband and wife to each other. The court stated that "the primary indicator of the intent of those parties is their own declarations, and, in the case at bar, the declarations of both the Petitioner [Joyce] and the decedent [David] belie that they intended to be a married couple." Evidence that David and Joyce had discussed getting married in a Catholic ceremony indicated to the court an intention to be married in the future. The court said that the testimony of family and friends that neither Joyce nor David ever declared themselves married had been taken into account. The court distinguished declarations of marital status from introductions as husband and wife. Although continuous cohabitation by the parties was established, the county court concluded by finding that Joyce did not establish either the intent of "these parties to be husband and wife to each other, nor that a public declaration of such ever occurred." Accordingly, Joyce was denied the rights of a surviving spouse. Joyce has appealed to this court.

## ASSIGNMENTS OF ERROR

Joyce asserts that the trial court erred (1) in improperly excluding certain evidence, (2) "with respect to the burden of proof to be carried by [Joyce] to establish a common-law marriage under the standards of applicable Iowa case law," (3) in finding that Joyce had failed to establish a common-law marriage between herself and David, and (4) "in failing to give sufficient weight to evidence supportive of [her] position."

## STANDARD OF REVIEW

■ In an appeal from a county court's decision in a probate matter as a law action, an appellate court reviews the county court's decision for error appearing on the record in the county court. *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996); *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995). However, in determining, under Iowa law, the existence of a common-law marriage, the scope of our review is de novo. See *In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979).

## ANALYSIS

◼ The validity of a marriage is determined by the law of the place where it was contracted. Neb. Rev. Stat. § 42-117 (Reissue 1993). Both parties agreed that § 42-117 controlled and that Iowa law was applicable. A common-law marriage is as valid in Iowa as a ceremonial marriage. *Matter of Estate of Stodola*, 519 N.W.2d 97 (Iowa App. 1994). Nebraska courts shall take judicial notice of the common law and statutes of other states. Neb. Rev. Stat. § 25-12,101 et seq. (Reissue 1995). The question, thus, turns on whether a common-law marriage existed between David and Joyce under Iowa law.

### *Exclusion of Evidence.*

Joyce argues that the lower court erred in excluding evidence. The evidence at issue was a notice of decision from the Iowa Department of Human Services recognizing Joyce as David's spouse. The notice, in effect, diverted income from an annuity held by David and from Social Security to Joyce, so she could pay his medical expenses. The court took the offer under advisement and indicated at trial that it would "rule on that as part of the overall ruling." The final order makes no mention of this document. The only clue we have that this evidence was not received is its presence in a manila envelope marked "Exhibits Not Received Into Evidence." There was no ruling in the record receiving or excluding the evidence, and from the trial court's written opinion, we cannot determine whether it was considered or impacted the trial court's decision.

◼ Where there is no ruling on objections to evidence, errors relating thereto cannot be considered on appeal. See *Plath v. Brunken*, 102 Neb. 467, 167 N.W. 567 (1918). In *Rueger v. Hawks*, 150 Neb. 834, 36 N.W.2d 236 (1949), the defendant objected to the testimony of the plaintiff's physician as to what certain x rays, which had not been received in evidence, would show with reference to the plaintiff's injuries and moved to strike such testimony, but the court did not definitely rule on the objections and the motion to strike and reserved ruling. The court failed to make a ruling, and the court's attention was not thereafter called to such omission. Therefore, competency of the testimony could not be raised on appeal.

Counsel for Joyce was required to procure a ruling in order to appeal and argue this matter as error. Without a ruling, we have nothing to consider on appeal, and the assignment of error is without merit.

## Burden of Proof.

Joyce next argues that the county court erred with respect to the burden of proof imposed on her. It is well settled under Iowa law that one asserting a claim of common-law marriage must prove such a relationship by clear, consistent, and convincing evidence. *Matter of Estate of Stodola, supra.* This was the burden of proof expressly set forth in the trial court's order. Having announced the correct standard of proof, the issue on appeal is whether the court considered the evidence and decided the case in accordance with this rather stringent burden of proof.

## Three-Prong Test for Common-Law Marriage.

The law governing this case is very straightforward. To establish the existence of a valid common-law marriage in Iowa, the burden is on the petitioner to prove by clear, consistent, and convincing evidence (1) that the parties had a present intent and agreement to be married, (2) that they continuously cohabitated, and (3) that they made general and substantial public declarations that they were husband and wife. *In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979); *Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102 (Iowa App. 1996). But a claim of common-law marriage is regarded with suspicion and is closely scrutinized, and no public policy favoring common-law marriages exists in Iowa. *Id.*

The second prong of the above test, continuous cohabitation, as said, was established. The record reflects that Joyce and David lived together for over 5 years. But mere proof of cohabitation is not sufficient to prove the existence of a common-law marriage. *Coleman v. Graves*, 255 Iowa 396, 122 N.W.2d 853 (1963). The Iowa Supreme Court has noted:

> It is well settled that, while cohabitation and the reputed relation of husband and wife may be shown as tending to give color to the relation of the parties and the recognition each by the other of the existence of a marriage between

them, the fundamental question is whether their minds have met in mutual consent to the status of marriage . . . . Neither such intention nor consent can be inferred from cohabitation alone . . . .

*In re Estate of Boyington*, 157 Iowa 467, 470, 137 N.W. 949, 950 (1912).

■ Turning to the first and third prongs of the test, Joyce argues the lower court failed to give sufficient weight to the evidence showing intent to be married and public declarations of marital status. The requisite intent to enter into a common-law marriage may be shown by circumstantial evidence. *In re Marriage of Winegard, supra.* Joyce relies upon *In re Marriage of Winegard* to establish the agreement between herself and David to be married. A comparison of the evidence in the instant case with that in *In re Marriage of Winegard* actually tends to negate the element of intent rather than support it. In *In re Marriage of Winegard*, the petitioner, Sally, had the burden to prove the existence of a common-law marriage to the respondent, John. The Supreme Court of Iowa discussed many factors bearing on its decision to recognize the existence of a marital relationship. The record in that case included:

"(2) opinions of various witnesses that the community generally regarded the parties as married; (3) continuous cohabitation by the parties . . . (4) John's failure to deny his alleged marriage; (5) John's acquiescence in Sally's use of his name and her representations to the community they were in fact married; (6) Sally's receipt of a wedding band from John; (7) hotel registrations and travel reservations wherein the parties were listed as Mr. and Mrs. John Winegard . . . (10) mail received and sent by the parties as Mr. and Mrs. John Winegard; (11) John's consent to Sally's ownership of and designation as beneficiary under an insurance policy on his life, wherein Sally was referred to as 'insured's wife' . . . ."

278 N.W.2d at 511. The Iowa Supreme Court, basing its decision on the above factors, found a common-law marriage had existed between Sally and John.

The record in this case contains some of the same factors used by the *In re Marriage of Winegard* court. There was testi-

mony that the community, consisting of neighbors, coworkers, and family members, generally regarded David and Joyce as husband and wife. In its order, the lower court pointed to 10 witnesses who testified. However, of those 10, "seven testified that neither the decedent [David] nor the Petitioner [Joyce] ever declared or stated themselves to be husband and wife, or that they were married; [an] eighth witness testified that [David] had never declared himself to be married to [Joyce]." The perceptions of a community, while possibly supporting the prong of public declaration, do little to prove the personal intentions of the parties to be married. The personal intentions of David are demonstrated by his words and actions, and the record is replete with evidence that he considered himself single, not married. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996).

The next factor to consider in the three-prong test for common-law marriages is denial of the marriage. In *In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979), John never denied he was married to Sally. In the instant case, however, the record reveals David denied being married on at least two occasions. First, Deborah Winans, a former girl friend, testified that David informed her that he and Joyce were in fact not married. That same year, when asked by his nephew if he would ever get married again, David replied, " 'What in hell would I ever want to get married for?' " Although of some import, the testimony of friends, coworkers, and neighbors is less important on the question of intent than the beliefs and declarations of the individuals themselves. Granted, there is evidence that on occasion, David and Joyce referred to the other as "husband" and "wife," as we have noted in the factual background. But the evidence to prove a common-law marriage under Iowa law must be consistent. See *Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102 (Iowa App. 1996). Consistency of evidence proving intent and public declaration required by Iowa law is lacking.

The court in *In re Marriage of Winegard, supra*, placed some emphasis on the fact that John sanctioned Sally's use of his last name. While this factor is hardly pivotal and perhaps outdated,

Joyce never used David's last name. While the couple at issue did purchase wedding rings, David wore his only "[n]ow and then."

In *In re Marriage of Winegard*, the parties registered at hotels as Mr. and Mrs. and made travel reservations as such. In the present case, on two different occasions, Joyce had the opportunity to publicly declare herself as Mrs. David Schenck or as his "wife." In 1987, she participated in a couples' group session with David as his "significant other," not as his wife. If the parties viewed themselves as husband and wife, and this was their agreement, the group session was a logical situation for Joyce to declare herself David's wife. Two years later, Joyce checked David into St. Joseph's Hospital and designated herself as "friend. Significant other," not as "wife."

Mail received and sent as Mr. and Mrs. is another factor considered by the *In re Marriage of Winegard* court. Joyce and David did receive one piece of mail as husband and wife. This was a card sent by David's sister which read, "for brother and his wife." This was someone else labeling the couple as married, not a declaration by the couple themselves. There was no evidence of mail sent by Joyce as Mrs. Schenck or sent by the couple as Mr. and Mrs. There was only this one card received by the couple.

Joyce argues her status as sole beneficiary of David's insurance policy is proof of intent and public declaration. There is no evidence in the record, however, that she was designated as the "insured's wife." In *In re Marriage of Winegard*, Sally was designated as such on John's policy. Moreover, being named as a beneficiary on an insurance policy does not necessarily import a marital relationship between the insured and the beneficiary.

Although there are some facts lending circumstantial support to an intent to be married, there are many facts dispelling that notion. For example, Schroeder, the personal representative of David's estate, introduced tax returns from 1992, 1993, and 1994. In each return, David had designated himself as a single man. Joyce argues he did this because he did not understand that the Internal Revenue Service would recognize a common-law marriage. But this is Joyce's version of what David thought, and, frankly, it is unconvincing. What remains uncontradicted is

that on his tax returns, David *declared* himself single, not married. The weight of the evidence comes down heavily as showing that David had no present intent to be married to Joyce.

## CONCLUSION

The petitioner, Joyce, failed to prove by clear, consistent, and convincing evidence that a common-law marriage existed between herself and David, and this is the burden she must carry. See *Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102 (Iowa App. 1996). The evidence indicated a lack of intent on the part of David to be married, as well as inconsistent and unconvincing evidence of public declarations. The decision of the county court for Douglas County is affirmed, and Joyce's request for a homestead allowance, family allowances, and an elective share of David's estate was properly denied.

AFFIRMED.