**J. Eydie BLESSING, Plaintiff,**

v.

**DEERE & COMPANY, d/b/a The Deere Pension Plan, Defendant.**

**Civil No. 4–96–CV–20490.**

United States District Court,
S.D. Iowa,
Central Division.

Nov. 4, 1997.

See also ___ F.Supp. ___.

Max Burkey, Des Moines, IA, for Plaintiff.

John F. Lorentzen, Frank B. Harty, Nyemaster Goode Voigts West Hansell & O'Brien, P.C., Des Moines, IA, for Defendant.

## ORDER ON SUPPLEMENTED RECORD OF MOTION FOR SUMMARY JUDGMENT

BREMER, Chief United States Magistrate Judge.

Plaintiff, J. Eydie Blessing (Blessing), asserts a claim pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, challenging the denial of spousal benefits under the pension plan of her alleged common-law husband, Walter Taylor, who is deceased. This matter is fully submitted on Defendant's resisted Motion for Summary Judgment.

*I.   Factual and Procedural Background*

This Court denied Defendant Deere & Company's, d/b/a The John Deere Pension Plan (Deere), resisted Motion for Summary Judgment (Clerk's No. 10) in its May 14, 1997, ruling (Clerk's No. 18), and remanded the case to the plan administrator for reconsideration of Blessing's application for spousal benefits. The Court incorporates the facts set forth in pages 1 through 5 of its May 14, 1997, ruling.

Deere filed a Motion for Reconsideration and a Request for Oral Argument (Clerk's No. 19) on May 29, 1997. Upon reconsideration, the Court concluded the administrator failed to articulate how she resolved conflicts in the evidence regarding the existence of Blessing's common-law marriage, or to otherwise provide a sufficient explanation of her rationale for denying benefits to permit court review of the decision under a deferential standard of review. The Court therefore denied the resisted Motion to Reconsider insofar as it requested entry of summary judgment for Deere, and remanded the proceedings for reconsideration by the plan administrator of Blessing's application for spousal benefits (Clerk's No. 25).

Following the Court's remand, the plan administrator wrote to Blessing inviting her to submit additional proof to satisfy two of the elements required to establish a common-law marriage: (1) that Walter Taylor, Deere's former employee, had a present intent and agreement to be married; and (2) that Taylor publicly declared he was Blessing's spouse for more than one year immediately prior to his death. If Blessing provided such additional evidence, Deere requested that she also explain why she did not furnish such evidence when she originally applied for benefits.

The plan administrator also asked Blessing to submit copies of any documents in which Blessing declared her own marital status during the relevant time period.[1] The administrator did not ask Blessing, if she pro-

---

1. The documents requested included copies of Blessing's federal and state income tax returns; employment records, including those relating to employee and surviving-spouse benefits; life insurance applications and designation of benefi-ciaries; testamentary wills and codicils; pension plan designations or elections; and any other documents from the relevant period showing Blessing's declarations concerning her marital status.

vided such evidence, to explain why she did not present this category of evidence when she originally applied for benefits.

Blessing submitted no documents in which she declared her own marital status during the relevant time period. She did, however, supply five additional affidavits to the administrator. Blessing provided no explanation as to why she had not furnished the affidavits in her original application.

Upon reconsideration, the plan administrator expanded its explanation of the denial of Blessing's benefits, including an analysis of how the administrator resolved conflicts in the evidence regarding the existence of a common-law marriage between Blessing and Taylor.

The Court granted Deere's Motion to Supplement the Record with the administrator's decision on reconsideration of Blessing's application for benefits. Blessing requested the Court to proceed with review of the decision to deny benefits pursuant to Deere's Motion for Summary Judgment. Both parties' supplemental briefings and written arguments were filed by October 20, 1997. This matter is fully submitted.

## II.  Conclusions of Law

### A.  Standard of Review

#### 1.  Motion for Summary Judgment

A party is entitled to summary judgment if no genuine issue as to any material facts exists, and if the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Barker v. Ceridian Corp.*, 122 F.3d 628, 632 (8th Cir.1997); *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir.1996). Summary judgment is inappropriate, however, where the record permits reasonable minds to draw conflicting inferences about a material fact. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511;

*Donaho*, 74 F.3d at 898. On a motion for summary judgment, a court must give the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Barker*, 122 F.3d at 632; *Donaho*, 74 F.3d at 897–98.

#### 2.  Denial of ERISA Benefits

Blessing brings her claim for denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), which should be reviewed under a de novo standard of review, unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Donaho*, 74 F.3d at 898. If a plan gives the administrator discretionary authority, then a court should review a plan administrator's decision only for abuse of discretion. *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956; *Donaho*, 74 F.3d at 898; *Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569, 571 (8th Cir.1992), *aff'd after remand*, 13 F.3d 272 (8th Cir.1993).

Here, the parties dispute which standard of review the Court should use in reviewing the administrator's decision. The parties agree the plan in effect when Taylor died did not give the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. The parties also agree the amended plan in effect when Blessing applied for surviving-spouse benefits gave the administrator discretionary authority.[2]

The Court has reviewed the plan in effect when Taylor died, and finds the plan did not give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. The Court has reviewed the amended plan's lan-

**2.** The amended plan included the following provision:

> F. Interpretations, Adjustments and Mistaken Payments
>
> To the extent permitted by law, an interpretation of the Plan and/or a decision on any matter within the Administrator's discretion

> made in good faith is binding on all participants, beneficiaries and persons. A misstatement or mistake of fact, or mistaken payment, or excess payment shall automatically be corrected as soon as is practicable after it becomes known.
>
> Def.'s Ex. A2.

guage and finds that the plan gave the administrator discretionary authority to determine eligibility for benefits and to construe the plan's terms.

■ The parties disagree over which plan's language the Court should consider in determining whether or not the plan administrator had discretion. Blessing contends the plan in effect when Taylor died controls, and the standard of review is de novo. Deere argues the plan in effect when Blessing applied for benefits controls, and the Court should review the administrator's decision for abuse of discretion.

The Court has not found any Eighth Circuit cases that address this issue. The Court, however, finds persuasive the reasoning in *Podolan v. Aetna Life Ins. Co.*, 909 F.Supp. 1378, 1384–85 (D.Idaho 1995), *aff'd on other grounds*, 107 F.3d 17 (Table), 1997 WL 51667 (9th Cir.1997). In *Podolan*, the plaintiff, an employee, became disabled in 1981 and received long-term disability benefits until 1993, when her benefits were terminated. In determining whether the plan administrator acted improperly in terminating the benefits in 1993, the court concluded it must consider the plan governing the administrator's conduct in 1993 to determine the scope of review over the administrator's decisions. *Podolan*, 909 F.Supp. at 1384 ("It was in 1993 that the claim for wrongful termination of benefits arose and it is the Plan administrator's acts in 1993 that are being reviewed by the Court.")

■ In support of the *Podolan* court's holding, the Court notes that an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied. *Mason v. Aetna Life Ins. Co.*, 901 F.2d 662, 664 (8th Cir.1990); *Kiefer v. Ceridian Corp*, 976 F.Supp. 829, 840-41 (D.Minn.1997); *Podolan*, 909 F.Supp. at 1385. A plan provision requiring discretion or interpretation does not work to deny benefits to a person until specifically applied to him or her. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1502–03 (9th Cir.1984) (quoted in *Redding v. AT & T Corp.*, 124 F.3d 217 (Table), No. 96–1394, 1997 WL 537882, at *3 (10th Cir. Sept. 2, 1997)).

Furthermore, when a plan administrator, in denying a pension after the enactment of ERISA, is required to consider pre-ERISA acts, the administrator's determination will invariably involve a contemporaneous construction of the post-ERISA plan's provisions, to which ERISA's fiduciary standards apply, *see Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir.1989), *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 313 (8th Cir.1979), not a construction of the pre-ERISA plan's provisions.

After considering the parties' briefs and arguments concerning this issue, and applying the reasoning in *Podolan*, the Court will look to the language in the amended plan in effect when Blessing applied for benefits in determining whether the administrator had discretionary authority to determine eligibility for benefits or construe the plan's terms. As stated above, the Court holds the amended plan gave the administrator discretionary authority. Consequently, the Court will review the administrator's decision for abuse of discretion.

### a. Abuse of Discretion Standard

■ Under the abuse-of-discretion standard, a court applies a deferential standard of review to an administrator's plan interpretation and fact-based eligibility determinations. *See Donaho*, 74 F.3d at 898. The deferential standard does not allow a reviewing court to reject an administrator's discretionary decision simply because the court disagrees. *Id.* The proper inquiry is "whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence." *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997). A court will affirm an administrator's reasonable interpretation of a plan. *Cox v. Mid–America Dairymen, Inc.*, 13 F.3d 272, 274 (8th Cir.1993); *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir.1992).

■ A court will deem an administrator's decision reasonable, if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision. *Cash*, 107 F.3d at 641. The court

cannot substitute its own weighing of the conflicting evidence for that of the plan administrator. *Id.* at 641. *Cox,* 965 F.2d at 573.

The *Finley* court outlined a five-factor test to evaluate the reasonableness of an administrator's decision in interpreting and applying plan provisions: (1) whether the administrator's interpretation is consistent with the goals of the plan; (2) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the plan. *Finley,* 957 F.2d at 621; *see Cash,* 107 F.3d at 641; *Buttram v. Central States Southeast and Southwest Areas Health & Welfare Fund,* 76 F.3d 896, 901 (8th Cir.1996); *Lickteig v. Business Men's Assur. Co. of America,* 61 F.3d 579, 583–84 (8th Cir.1995).

### B. Administrator's Decision

ERISA's main object is to protect plan participants and their spouses. *Boggs v. Boggs,* — U.S. —, —, 117 S.Ct. 1754, 1762, 138 L.Ed.2d 45 (1997). The surviving-spouse annuity is part of ERISA's mandatory participation and vesting requirements and protects spouses and plan participants. *Id.,* — U.S. at —, 117 S.Ct. at 1760.

To waive the joint-and-survivor annuity requirement, a participant must get his spouse's written consent, or alternatively, the participant may establish to the plan administrator's satisfaction that he could not get the consent, either because he had no wife or could not locate her. *See* 29 U.S.C. § 1055(c)(2); *Hearn v. Western Conference of Teamsters Pension Trust Fund,* 68 F.3d 301, 303 (9th Cir.1995).

Taylor died on May 22, 1988. If the administrator determined Blessing and Taylor had a valid common-law marriage one year prior to Taylor's death, Blessing would be entitled to benefits as a surviving spouse under ERISA's joint and survivor annuity requirement. *See Hearn,* 68 F.3d at 305–06 (pension plan was discharged from liability to an unknown but otherwise qualified, surviving spouse only to the extent it made payments under the plan to the deceased spouse; the plan remained liable to the surviving spouse to the extent its debt to the surviving spouse exceeded its overpayments to the deceased).

### 1. Common–Law Marriage— Applicable Law and Test

Designation of ERISA plan beneficiaries and determination of who is entitled to ERISA plan benefits are questions of federal law. *Equitable Life Assur. Soc. of U.S. v. Crysler,* 66 F.3d 944, 948 (8th Cir.1995). When an issue in an action under 29 U.S.C. § 1132(a)(1)(B) for judicial review of a denial of benefits is not expressly governed by ERISA, courts apply federal common law. *Id.* Courts applying federal common law, "may look to state law for guidance in developing federal common law, but it is inappropriate to apply state law if it conflicts with ERISA or its underlying policies." *Id.* at 948–49 (quoting *Mohamed v. Kerr,* 53 F.3d 911 (8th Cir.), *cert. denied,* 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995)).

The issue of what constitutes a valid common-law marriage is not expressly governed by ERISA; the Court therefore applies federal common law. In applying federal common law, the Court looks to Iowa law for guidance on this issue.

In Iowa, three elements must be proved to establish a common-law marriage: (1) present intent and agreement to be married; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife. *In re Marriage of Gebhardt,* 426 N.W.2d 651, 652 (Iowa App.1988); *In re Marriage of Winegard,* 278 N.W.2d 505, 510 (Iowa 1979); *Conklin v. MacMillan Oil Co.,* 557 N.W.2d 102, 104 (Iowa.Ct.App.1996).

When one party is deceased, the party asserting the marriage must prove the elements of a common-law marriage by a preponderance of clear, consistent, and convincing evidence. *Conklin,* 557 N.W.2d at

105. Continuous cohabitation of the parties and the declaration or holding out to the public that they were husband and wife is circumstantial evidence that tends to create a fair presumption that a common-law marriage existed. *Id.* A general and substantial holding out or open declaration to the public has been said to be the "acid test" of a common-law marriage. *Id.*

The Court may appropriately apply Iowa's state law on this issue, because it does not conflict with ERISA or its underlying policies.

### 2. Administrator's Finding of No Common–Law Marriage

■ In this case, evidence concerning the critical issue of the validity of the common-law marriage is conflicting. Deere asserts the administrator did not abuse her discretion in determining Blessing failed to establish a valid marriage. Deere asserts that abundant evidence in the record, in the form of Taylor's representations to the plan and Deere, supports the administrator's finding.

Blessing's evidence to support her claim of a valid common-law marriage included affidavits from family and non-family members and a decision by the Social Security Administration holding the common-law marriage was valid.

Amongst her evidence, Blessing submitted five new affidavits for the administrator's reconsideration of her claim. The administrator first excluded these new affidavits from the record, because Blessing did not explain why she could not have presented the affidavits when she made her original claim. However, in accordance with the remand, the administrator nevertheless then analyzed the affidavits, and she stated the evidence would not alter her decision to deny benefits.[3]

The administrator noted that from the time Taylor divorced his third wife, Ann, in October 1981, until his death in May 1988, he consistently presented himself in his employment records as an unmarried person. Specifically, the administrator considered the following: In April 1986, Taylor indicated he was single and marked "N/A" in the area for spousal name and information on an early retirement application, and he left blank the area for a spouse's signature on a form to authorize direct deposit of pension payments into his checking account; in May 1986, Taylor chose "Offset, Single" for his pension payment method; on a retirement health care form he filled out in May 1981, after he retired, Taylor crossed out the word "spouse" on the "Spouse/Dependent Data" section and inserted his son's name as his only dependent, wrote "none" in the box that asked if his spouse was employed, and failed to answer any of the questions that related to a spouse.

The administrator noted Taylor had no motive to lie about his marital status, because the right of any surviving spouse to receive benefits would not reduce or affect Taylor's benefits during his life. Blessing does not dispute this fact. The administrator also took into account that Taylor declared he was single on his life insurance policy, and that in February 1984, Taylor changed the beneficiary of the policy from Ann Taylor to "Juanita E. Blessing, Ex–Wife...."[4]

The administrator analyzed the five Statements Regarding Marriage that Blessing submitted to the Social Security Administration. These included statements from Blessing, her two sisters, and Taylor's mother and aunt. The administrator found none of the statements established the essential elements of a common-law marriage. Specifically, the administrator found the following: (1) Taylor's mother and sisters did not recognize Taylor's and Blessing's divorce and failed to relate any fact showing the couple had re-

---

**3.** Giving Blessing the benefit of all reasonable inferences that can be drawn from the facts, the Court considers the five new affidavits as part of the record and the administrator's analysis of the affidavits as part of her discretionary determination under review.

The Court bases its decision to consider the new affidavits as part of the record on an additional ground: The administrator gave Blessing a

clearer notice of her grounds for her decision—including the specific requirements of a common-law marriage that she was considering—in her 1997 letter regarding reconsideration (Def.'s Ex. HH.) than she had in 1995.

**4.** Taylor had designated each of his two previous wives, Georgia and Ann, as "wife" on the insurance policy.

married; (2) Blessing's statement shows her intent to be married before the divorce, but does not show an intent to be married after the divorce; (3) Taylor's aunt based her observation on the period before the divorce and, while recognizing the divorce, gave as her reason for considering the couple husband and wife that, "They are the parents of a boy and girl," which does not provide evidence supporting a common-law marriage.

The administrator next considered the five new affidavits and concluded they all failed to establish the elements of a common-law marriage. Ernest Wilson and Patrick Donahue, Taylor's friends, stated they believed Taylor considered Blessing to be his wife, but the administrator found they cited no facts to support their speculation. The administrator discounted the affidavit of Lawrence Gray, M.D., the couple's family physician, because Dr. Gray said he treated Taylor and Blessing for ten years before 1988 and believed they were married the entire time, although Taylor was married to Ann until 1981. Further, the administrator believed Dr. Gray's statement that Taylor and Blessing "held themselves out" to him as husband and wife was conclusory and unsupported by facts.

The administrator determined the affidavits of Karen Leek and Vincent Taylor, Blessing and Taylor's son, contained evidence that could support the existence of a common-law marriage.[5] The administrator, however, questioned the credibility of Vincent Taylor's statements, because the 40-year-old was living with his mother and thus may have an interest in her obtaining the pension benefits at issue. The administrator determined that Leek's affidavit was outweighed by the contradictory evidence.

The administrator did not follow the decision of the Social Security claim representative, because the representative did not have the conflicting evidence of the employment record and because the administrator did not participate in the Social Security proceedings.

The administrator gave no weight to the Statement of Death by the funeral director, which listed "J. Eydie Blessing Taylor" as Taylor's widow. The administrator noted the statement was made after Taylor's death, and argues the statement could have no relevance to Taylor's intent or conduct, or to the establishment of a marital relationship

Blessing claimed her common-law marriage to Taylor lasted from March 1981, when they began cohabitating, until his death. Taylor, however, remained married to Ann until their divorce in October 1981. Because Blessing and Taylor cohabitated at a time when they could not have been married, the administrator would not infer Taylor's agreement or intent to be married to Blessing based on the mere fact of cohabitation.

The administrator noted the fact that Blessing submitted no documentary evidence concerning her intent to be married during the relevant period before Taylor's death

The administrator determined that the evidence Blessing submitted to the plan administrator was conflicting or insufficient to establish a common-law marriage. The administrator concluded that Blessing had not met her burden of establishing a common-law marriage.

*3. Review of Administrator's Decision*

The Court reviews the Administrator's decision applying the deferential standard and the *Finley* test.

The first *Finley* factor involves analyzing whether the administrator's interpretation was consistent with the plan's purpose. *See Finley*, 957 F.2d at 621. The plan's stated purpose is, "to promote the mutual interests of Deere & Company and the eligible salaried employees of Deere & Company and its various U.S. subsidiaries and affiliates" (Def.'s Ex. A at 1.) The Court finds the administrator's interpretation was consistent with the plan's purpose.

The second *Finley* factor is whether the administrator's interpretation of the requirements for spousal benefits conflicted with

---

**5.** Leek stated in her affidavit that she heard Blessing refer many times to Taylor as "hubby," and heard Taylor refer to Blessing as his wife. Vincent Taylor stated he heard both Taylor and Blessing say many times they were remarried, and he heard them both introduce each other as their respective spouse.

ERISA's requirements. *See Finley* 957 F.2d at 621. This circuit has upheld denials of spousal benefits. *See Lee v. Union Elec. Co.,* 789 F.2d 1303 (8th Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 460, 93 L.Ed.2d 406 (1986). The Court finds the administrator's interpretation did not conflict with ERISA's requirements.

Regarding the three remaining *Finley* factors, the Court holds the administrator's interpretation does not appear to render any language in the plan meaningless or internally inconsistent; the administrator has interpreted the words at issue consistently; and nothing in the record indicates the administrator's interpretation is contrary to the clear language of the plan.

In light of the undisputed facts and an evaluation of the *Finley* factors, after viewing the evidence before the administrator deferentially, the Court cannot say the administrator's decision denying Blessing benefits was unreasonable. Therefore, the Court grants Deere's Motion for Summary Judgment.

Alternatively, if the Court were to apply the de novo standard of review, it would likewise grant the Motion for Summary Judgment. When applying a de novo standard of review in interpreting the terms of an ERISA plan, a court gives "the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words." *Barker,* 122 F.3d at 632. When reviewing a plan's decision de novo, courts are discouraged from considering evidence in addition to that before the administrator. *Cash,* 107 F.3d at 641.

In reviewing the affidavits, the Court notes Taylor's mother stated she heard her son and Blessing refer to each other as husband and wife between March 1981 and May 1988. Taylor, however, was still married to his third wife, Ann, in March 1981 and did not divorce her until October 1981.

Unlike the administrator, the Court does not find conclusory Dr. Gray's statement that the couple "held themselves out" to him as husband and wife. Nevertheless, after carefully analyzing the conflicting evidence, the Court holds, for the same reasons as stated by the administrator, that Blessing failed to meet her burden of proving the existence of a common-law marriage with Taylor.

*III. Conclusion*

Based on an analysis of the *Finley* factors, and giving Blessing the benefit of all reasonable inferences that can be drawn from the facts, the Court cannot say the administrator's decision denying Blessing benefits was unreasonable. The Court grants Deere's Motion for Summary Judgment.

IT IS SO ORDERED.