# IN THE COURT OF APPEALS OF IOWA

No. 22-0001
Filed October 5, 2022

IN RE THE MARRIAGE OF AIMEE J. HEIDE
AND JEFFREY T. HEIDE SR.

Upon the Petition of
AIMEE J. HEIDE,
      Petitioner-Appellee,

And Concerning
JEFFREY T. HEIDE SR.,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Sioux County, Jeffrey A. Neary,

Judge.

A former husband appeals the decree dissolving his marriage. **AFFIRMED.**

Jacquelyn Johnson, Sioux City, for appellant.

Kelly J. Goslinga of Clabaugh & Goslinga, PLC, Sioux Center, for appellee.

Considered by Bower, C.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BLANE, Senior Judge.**

This case has an unusual twist. The parties agree they got married, but cannot agree on how, where, and when. Jeffrey Heide contends he and Aimee Heide entered into a common law marriage when they had a destination wedding in Costa Rica on June 5, 2013. Aimee argues they were married on July 13 when they flew to Las Vegas and received a Nevada marriage certificate. The date is important because the parties signed a pre-marital agreement on June 18 that would only be valid if their marriage occurred on the later date in Las Vegas. The district court held that the parties' ceremony in Costa Rica did not establish a common law marriage, their marriage commenced in Las Vegas on July 13, and the pre-marital agreement was valid and controlling in their dissolution proceedings. Upon our de novo review, we affirm the district court's determination that the parties did not enter into a common law marriage during their destination wedding.

## I.    Factual and procedural background.

Jeffrey and Aimee were each previously married, had children, and were divorced. They became acquainted while serving as volunteers for the Sioux Center ambulance service in 2011. In 2012, they began discussing marriage and, in September, Aimee contacted an attorney to prepare a pre-marital agreement. A draft of the pre-marital agreement was sent to Jeffrey, and he responded with a list of changes and inclusions he wanted. The agreement was completed and ready for signing by May 2013. On January 17, 2013, Jeffrey signed a warranty deed that conveyed an interest in his house to Aimee as tenants in common since

Aimee had financially contributed to the remodel of what was to be the marital home. In the deed both were identified as "single" persons.

The parties planned a destination wedding on a beach in Costa Rica for June 5, 2013. Because of logistical hassle, they did not obtain a marriage license in Costa Rica. But there were all the trappings of a wedding on June 5. Many friends and family members attended, including Aimee's mother and father identified in photos as "parents of the bride," her son and two daughters, her two sisters, her nieces, and Jeffrey's children. Aimee assembled an album that contained memorabilia of the ceremony, including the wedding program and photos. These show what would be classified as a typical ceremony.[1] The program was entitled "Celebrating the Marriage of Jeffrey Heide and Aimee Plasier." Aimee is identified as the "bride," who wore a white dress and was accompanied by "bride's maids." There was a processional, and Aimee was escorted down the aisle by her son. There was an exchange of marriage vows, wedding rings, and a "[d]eclaration of [m]arriage." There is a photo of "the wedding party" and one on the beach after the ceremony of Aimee and Jeffrey where they wrote in the sand "Just married." A reception was held on the beach after the ceremony.

Upon their return to Iowa, Jeffrey and Aimee held a reception for family and friends who were unable to attend the ceremony in Costa Rica. They cohabitated

---

[1] The officiant listed in the wedding program was Aimee's niece. The record does not disclose whether she would be recognized in Costa Rica as a person authorized to conduct wedding ceremonies. Jeffrey does not contend that the ceremony in Costa Rica met that country's legal requirements so as to qualify for issuance of a marriage certificate.

in their home and continued to wear their wedding rings. Aimee however continued to use her last name of Plasier.

On June 18, Aimee and Jeffrey went to the attorney's office and signed the pre-marital agreement, which contained the following language: "contemplated marriage"; "[a] marriage is intended and desired to be solemnized between the parties."; "the proposed marriage"; "[i]n anticipation of their marriage"; "[i]n consideration of mutual covenants contained herein, prospective husband and prospective wife agree as follows . . ."; "[t]his agreement is to become effective only upon the solemnization of the marriage." Also on that date, Jeffrey and Aimee signed a warranty deed showing that "Jeffrey T. Heide, Sr., single, and Aimee Plasier, single, hereby convey to Jeffrey T. Heide, Sr., and Aimee Plasier as joint tenants with full rights of survivorship and not as tenants in common." The deed also states the same address for both Aimee and Jeffrey.[2]

Jeffrey and Aimee traveled to Las Vegas and obtained a Nevada marriage certificate on July 13, signed by the minister and one witness. Aimee's maiden name of "Plasier" appears on the certificate. Jeffrey testified that there was no ceremony in Las Vegas and that both he and Aimee were still wearing the wedding rings exchanged at the Costa Rica ceremony. When they returned to Iowa from Las Vegas, Aimee used the Nevada marriage certificate to change her last name to Heide and supplied it to her employer to have Jeffrey covered by her health insurance program.

---

[2] The drafting attorney was not present when Aimee and Jeffrey signed the pre-marital agreement and warranty deed. And she was not aware they held a ceremony in Costa Rica.

Fast forward to July 7, 2020, Aimee filed her Petition for Dissolution of Marriage. Jeffrey answered on August 10, 2020. Following a three-day trial in June 2021, the district court judge in October 2021 filed a thorough, fifty-nine-page dissolution decree in which all issues were addressed. The court found that the parties did not enter into a common law marriage based upon the ceremony in Costa Rica on June 5, 2013 and that their marriage commenced upon their marriage ceremony in Las Vegas on July 13 when the Nevada marriage certificate was issued. The court decided the pre-marital agreement signed by the parties on June 13 was valid and controlling. Jeffrey filed a rule 1.904 motion to reconsider, raising several issues, particularly the ruling on common law marriage and the pre-marital agreement. Aimee also filed a post-trial motion to amend, modify, and enlarge the decree but did not raise the common law marriage or pre-marital agreement. On December 22, 2021, the district court denied Jeffrey's motion, leaving intact the ruling against a common law marriage and enforcement of the pre-marital agreement. The court also addressed various issues raised by Aimee's motion. Jeffrey appeals.

## II.    Standard of review.

We review claims of a common law marriage de novo. *In re Marriage of Martin*, 681 N.W.2d 612, 616 (Iowa 2004). Appellate courts review appeals regarding dissolution of marriage de novo because such actions are equitable proceedings. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006); *see also* Iowa Code § 598.3 (2020); Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo.") In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not

bound by them. Iowa R. App. P. 6.904(3)(g). Each case depends upon its own unique facts; "precedents are not greatly valuable." *In re Marriage of Hiller & Nelsen*, No. 16-0997, 2017 WL 5185424, at *2 (Iowa Ct. App. Nov. 8 2017).

### III. Discussion.

A. Common law marriage claim.

In this appeal, Jeffrey continues to put forth his argument that he and Aimee entered into a common law marriage at their destination wedding ceremony in Costa Rica. The parties basically agree as to the facts and the law. It is on the application of our law regarding common law marriage to those facts that they disagree. Our supreme court has said:

> Two forms of marriage are recognized in Iowa. One is ceremonial, governed by statute. This form of marriage was recognized in our first code in 1851 and the requirements established then are essentially the same now. The second form of marriage is informal, known as a common law marriage. This type of marriage has been recognized in Iowa for well over a century. Although a common law marriage is as valid as a ceremonial marriage, there is no public policy favoring this type of marriage. Thus, claims of common law marriage are carefully scrutinized and the burden of proof rests with the party asserting the claim.

*Martin*, 681 N.W.2d at 616–17 (internal citations omitted).

To have a common law marriage, three elements must be met: (1) present intent and agreement to be married; (2) continuous cohabitation; and (3) public declaration that the parties are spouses. *Johnson-Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102, 105 (Iowa Ct. App. 1996). The agreement can be either express or implied. *Martin*, 681 N.W.2d at 617. Circumstantial evidence may be relied upon to demonstrate a common law marriage. *Marriage of Winegard*, 257 N.W.2d 609, 617 (Iowa 1977).

1.  Continuous cohabitation.

We first address this element as Aimee does not contest its existence. "Although [continuous cohabitation] is circumstantial evidence of a common law marriage, it cannot alone establish a common law marriage." *Martin*, 681 N.W.2d at 617. The district court found that "[g]iven the fact that Aimee's name was on the deed prior to the ceremony in Costa Rica, it is likely that they were living in the same residence and that she had unrestricted access to the house." In addition, when Jeffrey and Aimee returned to Iowa after the Costa Rica ceremony, they continued to cohabitate in the residence. On June 18, days after the Costa Rica ceremony, Aimee's address on the warranty deed is listed as the same as Jeffrey's. We agree that Jeffrey established by a preponderance of the evidence that the cohabitation element was met.

2.  Public declaration that the parties are spouses.

Our supreme court has held that the public declaration is the "acid test" of the common law marriage in Iowa because there can be "no secret common law marriage." *Winegard*, 257 N.W.2d at 616. Factors used to determine if a couple is holding themselves out as married are: failing to deny there is a marriage, allowing the other party to use their last name, showing them as their spouse on insurance, making hotel reservations as "Mr. and Mrs.," and by witnesses testifying to the general reputation of the couple as married. *Id.* Simply holding one's self out as married to the public is not always sufficient to create a common law marriage, but it is circumstantial evidence that a common law marriage exists. *Johnson-Conklin,* 557 N.W.2d at 105. Parties may hold themselves out as married in some circumstances and single in others. This can particularly be true when the

parties change their marriage status based on whether it is convenient for them to be single or married. *Martin*, 681 N.W.2d at 618 (finding that the couple did not have a common law marriage because they only publicly presented themselves as married based on personal convenience).

Jeffrey points to the fact that during the Costa Rica ceremony he and Aimee said the words and performed the traditions of a wedding, including exchanging marriage vows and wedding rings. The question is whether going through an unofficial ceremony constitutes a public declaration that the parties are spouses. Since most claims of common law marriage do not involve a wedding ceremony, the courts have established factors set out above for determining if the parties have publicly presented themselves as married. When it comes to the Costa Rica ceremony, it depends on whether the parties' intended it to be a basis for a common law marriage.

Based upon the facts here, we conclude the destination wedding ceremony in Costa Rica was for show and not a true public declaration of a marriage. Jeffrey concedes that he and Aimee were not "officially" married in Costa Rica. He acknowledges that both he and Aimee did not want to go through the "hassle" of obtaining a marriage license in Costa Rica, no marriage certificate was issued, and the wedding "officiant" was Aimee's niece, presumably not one authorized to perform an official wedding in Costa Rica.

We acknowledge that following the Costa Rica ceremony, there is additional evidence of a public declaration. Both Jeffrey and Aimee continued to wear the wedding rings they exchanged in Costa Rica. Also, upon their return to Iowa, a second wedding reception was held for those who did not travel to Costa Rica.

However, we find these do not overcome the evidence discussed below that show Jeffrey and Aimee did not intend the Costa Rica ceremony to initiate a common law marriage.

    3. Present intent and agreement to be married.

In line with the nature of a contract, it is crucial for there to be a present intent to be married in order to establish common law marriage. *In re Allen's Estate*, 100 N.W. 2d 10, 13 (Iowa 1959). To have present intent and agreement the couple may subjectively or objectively intend to be married in the present. *Winegard*, 257 N.W.2d at 616. The intent to be married in the future is not sufficient. *In re Fisher's Est.*, 176 N.W.2d 801, 806 (Iowa 1970). As the district court found, "the fact that Jeffrey states they got the statutory marriage done in Las Vegas to avoid the complications and fees of doing it in Costa Rica indicates that he knew at the time of the ceremony that the intention was for the future statutory marriage." We agree with the district court finding in this regard. Additional evidence as to the parties' intent is reflected in the fact that they both signed the pre-marital agreement as single persons on June 18, after they had returned from Costa Rica. And on the same date, both signed a second warranty deed as to the marital home, where they were both again designated as single persons. Aimee used her last name of Plasier on the Nevada wedding license and continued to use that last name until she legally changed it to Heide after obtaining the Las Vegas marriage certificate.[3] Aimee also did not add Jeffrey as a dependent on her

---

[3] There are two ways Aimee could have changed her last name to Heide. If she and Jeffrey had applied for a marriage license in Iowa, Iowa Code section 595.5 would allow her to change her name as part of that process. Since they did not apply for an Iowa marriage license, we can only assume Aimee pursued her name

employment health insurance until after the Las Vegas marriage. All of the indicia leads us to the conclusion that Jeffrey and Aimee did not enter into a common law marriage at their destination wedding ceremony in Costa Rica. They were instead legally married in Las Vegas. The pre-marital agreement was therefore timely signed on June 18, and the district court correctly found it applied to the division of assets in the dissolution action.

B. Appellate attorney fee request.

Both Jeffrey and Aimee request that the court award them appellate attorney fees. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). Appellate attorney fees are not a matter of right, but rest in our discretion. *Id.* After carefully considering each of these factors, we determine no award of attorney fees in this appeal is appropriate.

**AFFIRMED.**

---

change as authorized under Iowa Code section 674.1. Notice of the petition to change name must be served on the spouse. *See* Iowa Code § 674.6. Jeffrey would have had notice when Aimee sought her name change to Heide. And one spouse's acquiescence to another spouse's change of name is a factor that bears on the existence of a marital relationship. *See Winegard*, 257 N.W.2d at 616. Aimee and Jeffrey did not go through the name change process until after the Las Vegas trip.