# IN THE COURT OF APPEALS OF IOWA

No. 14-0736
Filed January 28, 2015

**UPON THE PETITION OF**
**FADIEA HABHAB,**
**Petitioner-Appellee,**

**AND CONCERNING**
**ERICK VALERIO SOSA,**
**Respondent-Appellant.**

_____

Appeal from the Iowa District Court for Hamilton County, James A. McGlynn, Judge.

Erick Valerio Sosa appeals from the district court's decree of custody and support of the parties' minor child. **AFFIRMED AS MODIFIED.**

Christina I. Thompson of Phil Watson, P.C., Des Moines, for appellant.

Dani L. Eisentrager, Eagle Grove, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

Erick Valerio Sosa appeals from the district court's decree of custody, visitation, and support of the parties' minor child. He contends the court erred in failing to find a common law marriage existed between him and Fadiea Habhab. He also argues the district court erred in its calculation of child support to be paid by Fadiea and by including certain modification triggering provisions in the decree. We affirm the decree as modified.

**I. Background Facts and Proceedings.**

Fadiea and Erick, both twenty-three years of age at the time of the trial, had a very short-term romantic relationship in 2010. They moved in together in Erick's parents' home on Valentine's Day 2010 having just met each other, they found out Fadiea was pregnant a few weeks later, and within a month their relationship ended. Fadiea moved to Texas for several months, but returned to Iowa before their child was born on November 16, 2010. Erick was not present at the child's birth. At the time the child was born, Fadiea was residing with a friend in Iowa Falls. About two weeks later she and the baby moved to Webster City to live with Fadiea's sister. Fadiea began to suffer from postpartum depression. She heard voices telling her to harm the infant. On December 18, 2010, Fadiea placed the child with her aunt and uncle in Laurens. Fadiea was in a mental health ward of a hospital for several days and was discharged just before Christmas. She then lived with her aunt, uncle, and the child for about six months in Laurens. Although Fadiea was in the home, she admitted that her aunt and uncle were the caregivers of the child.

When the child was about eight months old, the Department of Human Services (DHS) became involved. Erick then also became involved in the child's life. A child support action was commenced and Erick's paternity was established. DHS sought a child-in-need-of-assistance (CINA) adjudication for the child and with the agreement of both parents the child was adjudicated to be a CINA. Services were offered by DHS to both Fadiea and Erick. Fadiea made no progress toward reunification. Erick, however, met the expectations of DHS and, in June 2012, the child was placed in Erick's custody, where he has remained. The CINA case was closed in January 2013.

On July 16, 2013, Fadiea filed a petition to establish custody, visitation, and support. In an amended answer, Erick asserted the parties had a common law marriage. Trial was held on March 11–12, 2014, after which the district court concluded Erick had not established a common law marriage existed. The parties were granted joint legal custody and the child was placed in Erick's physical care. The court's decree established visitation and set child support. The court included these provisions in the decree:

> 1. No common law marriage existed between Fadiea Habhab and Erick Sosa Valerio and the parties remained single persons at all times.
> . . . .
> 4. If Erick relocates the residence of the minor child to a location which is 150 miles or more from the residence of the minor child at the time of this decree, or if any adverse action is taken by immigration authorities against Erick, the Court may consider the relocation or the adverse actions of immigration authorities a substantial change in circumstances and the provisions of Iowa Code Section 598.21(b) [sic] shall apply in the Court's consideration of a possible modification of this decree.
> 5. Fadiea shall pay child support to Erick in the amount of $114.00 per month and medical support of $89.07 per month beginning April 1, 2014, and continuing thereafter until the child

turns 18 or graduates from high school, whichever is last to occur. The Court retains jurisdiction regarding child support, medical support, and tax exemption issues in the event Fadiea's income increases to the point where there is a ten percent discrepancy in the amount of child support pursuant to the guidelines.

Erick now appeals. He contends the district court erred in failing to find a common law marriage existed between him and Fadiea. He also argues the district court erred in calculating Fadiea's child support. Finally, he objects to the certain modification triggering provisions in the decree. Fadiea has filed no brief with this court.

**II. Standard of Review.**

We review claims of common law marriage de novo. *In re Marriage of Martin*, 681 N.W.2d 612, 616 (Iowa 2004).

Issues ancillary to a determination of paternity are tried in equity. *Markey v. Carney*, 705 N.W.2d 13, 20 (Iowa 2005). We review equitable actions de novo. Iowa R. App. P. 6.907. We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams,* 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). When we consider the credibility of witnesses in equitable actions, we give weight to the findings of the district court, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

**III. Discussion.**

*A. Common Law Marriage.* Iowa recognizes both ceremonial and common law marriages. *Martin*, 681 N.W.2d at 617. "Although a common law marriage is as valid as a ceremonial marriage, there is no public policy favoring this type of marriage." *Id.* The burden of proof lies with the party asserting the existence of a common law marriage. *In re Marriage of Winegard*, 278 N.W.2d

505, 510 (Iowa 1979) (hereinafter *Winegard II*). "[S]uch a claim of marriage will be regarded with suspicion." *Id.*

To establish he and Fadiea entered into a common law marriage, Erick had the burden to prove by a preponderance of evidence these three elements: (1) a present intent and agreement by both parties to be married, (2) continuous cohabitation, and (3) public declaration they were husband and wife. *See id.* A failure to prove any of the three elements dooms the claim to a common law marriage. *Id.*

On our de novo review, we conclude Erick failed to prove at least two elements of his claim—a present intent by both parties to be married and a public declaration of marriage. The two parties were involved in very short term relationship when they were nineteen years old[1] and they moved into Erick's parents' home. Erick's parents were conservative religious people who spoke only Spanish. Erick's mother testified Erick told her the two were married. When asked if Fadiea said they were married, Erick's mother stated, "No. She didn't say anything." Erick's aunt testified the two were married, but when asked why she believed they were married, she stated, "[S]he was pregnant, they were together. They lived together."

As noted by the district court:

Fadiea and Erick were involved in a short term relationship when they decided to move in together. They cohabitated for a total of about one month. During this one-month period [the child] was conceived. Erick submitted a copy of a note Fadiea wrote apparently in the form of a prayer in which she signed Erick's last name, Valerio, and a document which Fadiea apparently signed identifying Erick's sister as Fadiea's sister-in-law. Erick testified

---

[1] Fadiea announced on social media that she was in and out of "love" quickly and often.

that he and Fadiea were introduced to his family and to his church as husband and wife, however, he had filed his tax returns as single. Fadiea strongly denies any common law marriage existed. Her family, including her mother, never [was] advised of a marriage. Except for the two documents submitted by Erick, there was no other proof that Fadiea has held herself out to be Erick's wife. . . .

Even if Erick made statements to his family that he and Fadiea were married, Fadiea cannot be considered to have adopted any of those statements as true for the simple fact of the language barrier. Erick's mother and other family members all required the assistance of an interpreter to testify at trial. Any statements Erick may have made to his family or to the members of their church certainly would have been in Spanish and it does not appear that Fadiea spoke any Spanish at the time. All Erick has really shown is that he held out the couple as being married, not that the couple held themselves out as being married. The reference to Erick's sister as Fadiea's sister-in-law very likely was an expedient tactic to obtain housing. The note which Fadiea signed appears to be a private prayer and hope for the future, certainly not a public declaration. It would be reasonable to assume that Fadiea's family would have known of a marriage if in fact it had occurred.

The trial court specifically found Fadiea's testimony more credible on this issue.

We affirm.

*B. Child support.* The record establishes that shortly before the trial in this matter, Fadiea was terminated by Hagie Manufacturing in Clarion, where she earned about $26,300 per year. Erick asked that the court impute that income to Fadiea for purposes of establishing child support. The district court declined,

It is true that Fadiea had a job which paid over $26,000 per year, but she was fired from it. At the time of trial she testified she was unemployed and had not yet been approved for unemployment. The Court FINDS that the minimum wage for 40 hours per week should be imputed to Fadiea for child support purposes at this time.

The court retained jurisdiction "regarding child support, medical support, and tax exemption issues in the event Fadiea's income increases to the point where there is a ten percent discrepancy in the amount of child support pursuant to the

guidelines." On appeal, Erick challenges the court's finding that Fadiea's earning capacity is minimum wage, arguing the finding creates a substantial injustice between the parties.

"Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and noncustodial parent at the time of the hearing." *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 332 (Iowa Ct. App. 2005). Iowa Court Rule 9.5 provides, "To determine gross income, the court shall not impute income under rule 9.11 except: (a) Pursuant to an agreement of the parties, or (b) Upon request of a party, and a written determination is made by the court under rule 9.11." Erick asserts both parties agreed that income should be imputed.

Rule 9.11(4) provides the court "may impute income in appropriate cases." That paragraph continues:

> If the court finds that a parent is voluntarily unemployed or underemployed without just cause, child support may be calculated based on a determination of earning capacity. A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earning levels in the community, and other relevant factors. The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.

Iowa Ct. R. 9.11(4).

Fadiea was not voluntarily unemployed at the time of trial. Except for the job from which she was terminated, she has held numerous, short-term positions earning $7 to $8 per hour. We find no reason to disturb the court's child support

calculations, particularly in light of the court's retention of jurisdiction to modify the support should Fadiea's income increase sufficiently.

*C. Triggering provision.* Lastly, Erick argues the district court's order improperly includes a mandatory triggering mechanism for modification of the custody provision. Erick contends two statements of the district court's decree violate the principle that the trial court is not to predetermine what future circumstances will warrant a modification. *See In re Marriage of Thielges*, 623 N.W.2d 232, 237-38 (Iowa Ct. App. 2000). First, in its findings, the trial court wrote:

> The Court FINDS that under the circumstances Fadiea's concerns can be addressed by awarding joint legal custody and by providing in the decree that in the event the child is moved more than 150 miles from his current home or if Erick is the subject of any adverse immigration action whatsoever, such facts *would* constitute a material and substantial change of circumstance justifying a modification of the custody arrangement.

(Emphasis added.) The court then decreed:

> 4. If Erick relocates the residence of the minor child to a location which is 150 miles or more from the residence of the minor child at the time of this decree, or if any adverse action is taken by immigration authorities against Erick, the Court *may* consider the relocation or the adverse actions of immigration authorities a substantial change in circumstances and the provisions of Iowa Code Section 598.21(b) shall apply in the Court's consideration of a *possible modification* of this decree.

(Emphasis added.)

In *Thielges*, this court stated:

> We *strongly* disapprove, however, of custody provisions, whether stipulated by the parties or mandated by the court, that predetermine what future circumstances will warrant a future modification. A court should not try to predict the future for families, nor should it try to limit or control their actions by such provisions. Such provisions, besides misleading the parents, seem to provide

that one event alone will mandate a change of physical care. This is an erroneous notion. Any such change of circumstances must be weighed with all the other relevant conditions affecting physical care.

623 N.W.2d at 237-38 (citations omitted).

We agree that the first quoted sentence found on page twelve of the decree will be stricken because it provides that certain circumstances "would constitute a material and substantial change of circumstance justifying a modification of the custody arrangement." Even if we agree that factors *might* constitute a change of circumstances, any changes of circumstances "must be weighed with all the other relevant conditions affecting physical care." *Id.*; *see also* Iowa Code § 598.21D.[2] Paragraph 4 does not similarly predetermine what will constitute a change of circumstances requiring a modification. It states certain factors that the court "*may* consider" in considering "a *possible modification* of this decree." Nonetheless, the paragraph cites a nonexistent

---

[2] Iowa Code section 598.21D provides:

> If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court *may consider the relocation a substantial change in circumstances. If the court determines that the relocation is a substantial change in circumstances*, the court shall modify the custody order to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent. If modified, the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact between the nonrelocating parent and the minor child. The modification may include a provision assigning the responsibility for transportation of the minor child for visitation purposes to either or both parents. If the court makes a finding of past interference by the parent awarded joint legal custody and physical care or sole legal custody with the minor child's access to the other parent, the court may order the posting of a cash bond to assure future compliance with the visitation provisions of the decree. The supreme court shall prescribe guidelines for the forfeiting of the bond and restoration of the bond following forfeiting of the bond.

(Emphasis added.)

code section and states nothing more than is provided by law. We strike numbered paragraph 4 on page twenty of decree. We affirm the court's decree as modified.

**IV. Attorney Fees.**

Erick requests an award of appellate attorney fees. The *Martin* court held attorney fees incurred to prosecute or defend an action to establish and dissolve a common law marriage were allowable under Iowa Code section 598.11, as long as there was a fair presumption of the existence of a common law marriage, even if the court finds no such marriage existed. 681 N.W.2d at 619–20. Regardless of whether attorney fees would be available to the parties in this case, we decline to award them.

Costs are assessed one-half to Erick and one-half to Fadiea.

**AFFIRMED AS MODIFIED.**