# IN THE COURT OF APPEALS OF IOWA

No. 22-0565
Filed December 21, 2022

**LUCAS LEE SHANE,**
    Petitioner-Appellant,

**vs.**

**MARIE LYN WALTERS,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Bremer County, DeDra L. Schroeder,

Judge.

Lucas Shane appeals from the order dismissing his petition for dissolution

of marriage. **AFFIRMED.**

Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,

Cedar Falls, for appellant.

Heather A. Prendergast of Roberts, Stevens & Prendergast, PLLC,

Waterloo, for appellee.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

In this case we are asked to sort through a mixed bag of evidence and determine whether Lucas Shane and Marie Walters had a common law marriage. For the reasons that follow, we conclude Shane has not carried his burden to prove the common law marriage and affirm.

Walters is a widow. Her late husband died in a motorcycle accident in 2011. Since then, Walters has been focused on protecting death benefits and investments for the benefit of herself and her minor children. Walters started dating Shane in September 2012, and Shane moved into Walters's home soon after. They shared some but not all household expenses.

The following year, Walters bought a lake house, which the parties enjoyed together. Walters made the down payment with her money, but Shane paid the monthly mortgage payments and covered the cost of some renovations. Walters's name was on the deed and purchase agreement; Shane's was not, apparently due to issues with Shane's credit score caused by unpaid taxes. The parties split the significant cost of repairing a lakeside retaining wall.

The year after that, Walters used her money to buy a property for Shane's business. Although the parties agreed Shane would pay Walters back for this property, Shane never made any payments while the two were romantically involved.

About one year later, in 2015, Walters was diagnosed with breast cancer. She had health insurance, but her insurance would not allow for her preferred treatment in Minnesota. Shane's insurance did cover the Minnesota treatment. So Walters and Shane completed an "Affidavit of Common Law Marriage," which

attested that the parties "agreed to live as married spouses," "so lived and cohabited," and "held [them]selves out to be in a common law marriage." Though the affidavit was not contemporaneously notarized and includes some technical errors, it was accepted by the insurance company, and Walters received medical treatment in Minnesota while on Shane's insurance policy. Walters's cancer eventually went into remission. Shane estimated that Walters utilized more than $100,000 in insurance benefits.

After a few more years, the relationship between Walters and Shane broke down. From Walters's perspective, Shane was or had become a womanizer. Walters and Shane started sleeping in separate bedrooms in 2019 and soon stopped living together. By Christmas of 2020, Shane received a card at the lake house addressed to him and his new significant other.

Throughout their relationship, both parties filed taxes as single persons. The property records reflect they were single persons. And Walters continued to receive Social Security benefits as a widow. In a different legal action, Shane filed a pleading asserting that the parties were never married. Neither party wore a wedding ring or changed their names. For the most part, they maintained separate financial accounts. Walters's will, updated while the parties were romantically involved, granted guardianship of her children to Shane in the event of her death, but it did not list Shane as her husband or "family."

On the other hand, Walters added Shane to one of her credit cards and made at least some statements suggesting Shane was her "husband." For his part, Shane would sometimes talk about his "wife" and the "boys" (referring to Walters and her children). Witnesses testified in both directions at trial, with some

indicating the parties behaved as a married couple and some indicating they did not.

Shane brought a petition for dissolution of marriage, seeking to establish that he and Walters had a common law marriage and to obtain ownership of the lake house. Following a bench trial, the district court dismissed Shane's petition, finding he had not proven the existence of a common law marriage. Although there is some conflicting evidence, we affirm on de novo review after giving appropriate deference to the district court's firsthand view of the witnesses at trial. *See In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009).

"[C]laims of common law marriage are carefully scrutinized and the burden of proof rests with the party asserting the claim." *In re Marriage of Martin*, 681 N.W.2d 612, 617 (Iowa 2004). The three elements that must be proven are "(1) [p]resent intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." *Id.* (quoting *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979)). We agree with the district court that the second element was clearly proven and not disputed, so we focus on the first and third.

The evidence of intent and agreement to be married comes mainly from the insurance affidavit. Both parties agreed that they signed the affidavit to manipulate the insurance company, rather than truthfully depict their relationship. The propriety of obtaining insurance by false affidavit is beyond the scope of our opinion here. Regardless of the underlying ethical issue, however, the affidavit is not sufficient evidence on its own to establish common law marriage given the contrary evidence. In our evaluation of the whole record, the repeat sworn tax

returns and property documents asserting the parties were single carry at least as much weight as the affidavit.

Evidence that the parties held themselves out as husband and wife is thin. While the parties made occasional reference to each other as husband or wife, the greater weight of evidence at trial proved most third parties understood Walters and Shane were not married. Tellingly, it was a running joke and topic of conversation among friends, family, and neighbors that Walters and Shane were not married. Also, while the children did refer to Shane as "dad," the oldest child told a same-age friend that Shane and Walters were not married—"they're just dating." This evidence does not establish the substantial "public declaration or holding out to the public" that is the "acid test of a common law marriage." *Martin*, 681 N.W.2d at 618.

Perhaps the best legal authority for Shane is a published decision from our court. *See In re Est. of Stodola*, 519 N.W.2d 97 (Iowa Ct. App. 1994). There, we found a common law marriage when the parties signed a notarized affidavit of common law marriage after twenty years of cohabitation *and* the parties filed joint tax returns, registered as husband and wife at motels, and held themselves out as husband and wife at social events. *Id.* at 99. The husband also designated the wife as his retirement-plan beneficiary and listed her as his common law wife on the documents. *Id.* Aside from the affidavit, none of those indicia are present in this case. *See In re Marriage of O'Connor-Sherrets*, No. 08–0293, 2008 WL 4877763, at *1–2 (distinguishing *Stodola* on that basis). *Stodola* does not control.

While some of the record evidence cuts both ways, we cannot disagree with the district court's finding that Shane did not carry his burden to prove a common

law marriage. Even if the persuasive value of the affidavit were greater and it balanced out the countervailing evidence, we would still be compelled to uphold the district court's ruling. *See Greenberg v. Alter Co.*, 124 N.W.2d 438, 442 (Iowa 1963) (when "[t]he best that can be said is the evidence is in equipoise," the "plaintiff has not carried the burden of proof by a preponderance of the evidence"). We affirm the district court's dismissal of the petition for dissolution.

Last, Walters seeks appellate attorney fees. We assume without deciding that attorney fees are available under section 598.11 to a respondent–appellee, when the district court finds there was no common law marriage and the petitioner appeals. *See Martin*, 681 N.W.2d at 619–20 (holding trial attorney fees are available to a petitioner who unsuccessfully claims the existence of a common law marriage "as long as there is a fair presumption of the existence of a common law marriage"); *see also Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding a statute that allows an award of trial attorney fees also allows an award of appellate attorney fees). Our discretion to award appellate attorney fees "is guided by the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). The record demonstrates Walters has a superior financial position to Shane and does not need the award. Also, while Walters prevailed on appeal, we again note the mixed evidence at trial and observe that the strongest evidence against Walters's position was the affidavit she signed to manipulate the insurance company. We decline to award attorney fees to Walters. We assess costs to Shane.

**AFFIRMED.**