In re the Matter of the ESTATE OF James W. STODOLA, Deceased,

**Joyce KONICEK, Claimant, Appellee,**

v.

**Sharee Kae LIND, Executor of the Estate of James W. Stodola, Appellant.**

No. 93–0728.

Court of Appeals of Iowa.

April 26, 1994.

Michael E. Sheehy and Gerald J. Kucera of the Tom Riley Law Firm, Cedar Rapids, for appellant.

Stephen C. Nelson of Moyer & Bergman, Cedar Rapids, for appellee.

* Senior judge from the 5th Judicial District serving on this court by order of the Iowa Supreme

Heard by DONIELSON, P.J., SACKETT, J., and CRITELLI, S.J.*, but decided by DONIELSON, C.J., and HAYDEN, SACKETT, HABHAB, CADY and HUITINK, JJ.

SACKETT, Judge.

The focal question in this appeal is whether claimant-appellee Joyce Konicek and decedent James W. Stodola were married by common law. The case was tried to a jury. The jury found Joyce and James were married by common law. Appellant Sharee Kae Lind, executor of the estate of James W. Stodola, has appealed this decision and contends: (1) a summary judgment asking the trial court to give a decision by the United States Tax Court preclusive effect should have been sustained; (2) the claim of common-law marriage should not have been submitted to the jury; (3) appellant's motion for new trial or judgment notwithstanding the verdict should have been sustained; and (4) the jury was not properly instructed. We affirm.

 Iowa recognizes common-law marriage. *See In re Marriage of Jones*, 451 N.W.2d 25, 27 (Iowa App.1989). In Iowa, a common-law marriage is as valid as a ceremonial marriage. *See In re Estate of Dallman*, 228 N.W.2d 187, 189 (Iowa 1975). The party asserting the existence of a common-law marriage must prove three elements by a preponderance of the clear, consistent, and convincing evidence: (1) present intent and agreement to be married; (2) continuous cohabitation; and (3) general and substantial public declarations that the parties are husband and wife. *Jones*, 451 N.W.2d at 27; *In re Marriage of Gebhardt*, 426 N.W.2d 651, 652 (Iowa App.1988). With these principles in mind, we look to the case before us.

 The executor made a motion for summary judgment contending a tax court decision finding there was no common-law marriage in 1982 and 1983 should have been given preclusive effect and been dispositive of the marriage issue. The trial court over-

Court.

ruled the motion. Joyce contends on appeal the motion should have been sustained.

James and Joyce filed federal income tax returns claiming status as persons married to each other in calendar years 1982 and 1983. The Internal Revenue· Service challenged their filing status contending they should file as single persons. The issue was resolved as to Internal Revenue Service and James and Joyce through a section 7463 proceeding. The result of the proceeding was the tax court did not accept James's and Joyce's claim they had a common-law marriage. The executor claims the tax court decision resolved the issue.

The trial court, in ruling on the executor's motion for summary judgment, did not address the claim that the tax court ruling should preclude re-litigations of the issue of a common-law marriage. The trial court found, even if the ruling were given preclusive effect, it did not preclude a court from considering James and Joyce to have a common-law marriage in subsequent years. We agree with the trial court's assessment and affirm the refusal to grant a summary judgment on this issue.

The executor's next complaint is the factual issues should not have been submitted to the jury. The executor argues the action was an action in equity, not at law. If the case is in equity, we review de novo and make our own factual findings. Iowa R.App.P. 4. Our factual findings agree with those made by the jury. Therefore, the result would be the same whether the case was submitted to the jury or tried by the court. The executor's argument on this issue has no merit.

■ We agree with the jury's factual decision and further find the only conclusion that can be drawn from this record is the elements of a common-law marriage between James and Joyce were established by clear and convincing evidence. In making this assessment, we particularly focus on the following evidence which is undisputed.

Joyce and James began cohabiting in 1971, and their cohabitation continued without interruption until James's death.

In 1985, as part of their tax audit, James and Joyce signed a statement that said:

We the undersigned, James Stodola and Joyce J. Konicek wish to state and let it be known that we have lived together since 1970 as common law husband and wife, and hold ourselves out as being a common law husband and wife under the laws of the state of Iowa.

In 1986, James wished to be insured as a spouse on the Blue Cross Blue Shield contract that Joyce had with her employer. Because James and Joyce do not have a marriage certificate, the insurance carrier to include James as an insured spouse required both parties to execute a document entitled "Affidavit Common Law Marriages." Both James and Joyce signed the document in October 1986, James was then included on Joyce's health insurance policy as her spouse. This insurance paid costs of James's last illness. The· document said:

We, the undersigned, being duly sworn, do declare that on or about October 15, 1971, we agreed to live as husband and wife, and that we have so lived and cohabited since that time. We further state that we have since that time held ourselves out to be husband and wife and that both of us have not previously been married, or, if either of us has been previously married, said marriage has been terminated by death, annulment, or dissolution. The undersigned hereby grant to Blue Cross of Iowa and Blue Shield of Iowa or its representative permission to inquire of anyone who knows the undersigned as to the status of the undersigned and whether the undersigned have in fact held themselves out to be husband and wife since the date above named.

In 1988, James designated Joyce as the beneficiary of his retirement plan and showed her as his common-law wife. There were a number of other times, including social events and motel registrations, when they represented they were married.

The affidavit filed with Joyce's health insurance carrier is the most persuasive piece of evidence. The affidavit was sworn to and signed before a notary public by both James and Joyce. In the affidavit the couple both

declared under oath they had met the legal requirements necessary to be married by common law in Iowa. The only finding the affidavit can support is as of October 30, 1986, the day the affidavit was signed, James and Joyce considered themselves married, had cohabitated, and held themselves out as married.

The affidavit, supported by the undisputed evidence of twenty years of cohabitation and the undisputed evidence of other holding outs, can only support the conclusion James and Joyce were married by common law. We find support for our position in the case of *In re Estate of Fisher*, 176 N.W.2d 801 (Iowa 1970), where the facts supporting a common-law marriage were considerably weaker and the court said:

> The conduct of the defendant in summoning an insurance agent to his home to secure life insurance upon the life of the appellant at which time he either represented himself to be her husband or acquiesced in her statements that such was the case, is indicative of a present intention on the part of the decedent to recognize the marriage relationship. The representation of the appellant to the insurance agent on her own part that she was the wife of the decedent made in the presence of the decedent and either acquiesced in by him or not denied, is a strong circumstance evidencing that the minds of the parties had met, and that there was mutuality of consent to establish a marriage relationship. Introduction of one party by the other as the wife or husband is in and of itself an acknowledgment of the marital relation, and while it may not be in and of itself proof of a present agreement and intent, it may support other evidence and is important in cases of this kind.

*Fisher*, 176 N.W.2d at 806–07.

In reaching this conclusion, we are aware there was also undisputed evidence of a number of instances during the twenty-year period when James and Joyce represented they were single people or not married.

Once married by common law, one is married and subsequent representations of a single status do not invalidate the marriage by common law anymore than such represen-tations would invalidate a marriage by ceremony. A dissolution decree is necessary to dissolve either marriage. *See Fisher*, 176 N.W.2d at 807.

We have considered the other issues raised by the executor and find them to be without merit.

AFFIRMED.