### In re the MARRIAGE OF Roberta Lynn MARTIN and Brett L. Martin.

### Upon the Petition of Roberta Lynn Martin, Appellee,

### and

### Concerning Brett L. Martin, Appellant.

No. 03–0355.

Supreme Court of Iowa.

June 16, 2004.

C.R. Hannan of Reilly, Petersen, Hannan & Dreismeier, P.L.C., Council Bluffs, for appellant.

J.C. Salvo and Bryan D. Swain of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for appellee.

CADY, Justice.

This appeal primarily requires us to decide if a person who cohabitates with another person can derive a claim to property acquired by the other cohabitant during the period of time the parties lived together based on the cohabitation. The district court determined the parties never maintained a common law marriage, but awarded property acquired during the period of cohabitation by one of the parties to the other party, along with attorney fees. The court of appeals affirmed the district court conclusion that the parties did not have a common law marriage, affirmed the property award, and reversed the award of attorney fees. We vacate the decision of the court of appeals and modify the decision of the district court. We find no common law marriage existed between the parties, but determine the district court had no authority to divide property owned by one party. The district court properly awarded attorney fees. We remand the case to the district court for entry of an order restoring the property rights of the parties.

## I. Background Facts and Proceedings.

Roberta and Brett Martin were married in 1988. They lived together prior to their marriage and had one child, Ashley. She was born six months before the marriage. Roberta and Brett moved with Ashley to Clarinda in 1989.

The marriage ended in divorce in 1990. Although Brett moved from the family residence into an apartment at that time, Roberta and Brett continued to enjoy an amicable relationship. Brett maintained a presence at the family residence, and frequently stayed overnight. According to Roberta, the divorce was obtained as a means for her to qualify for various forms of public assistance, including financial aid, to enable her to attend college. Because of this, Roberta considered Brett to be her husband following the divorce. Roberta enrolled in college after the divorce, and received various public assistance and aid.

Brett purchased a home in Clarinda in December of 1991, and the parties began living together in the home a few months later. The deed and mortgage on the property were in Brett's name, and both documents designated him as a single person. Roberta stopped receiving public assistance a short time after she moved into the house.

Roberta and Brett lived together for the next ten years, except for those periods of time when Roberta moved from the home following disputes. In 1993, Roberta moved from the home after Brett refused her repeated requests to remarry. She also filed a petition in district court for maintenance of an unmarried person a short time later. The action was subsequently dismissed and Roberta returned to the home. In 1996, Roberta again moved from the home for approximately five months. The parties finally separated in May 2002, and Roberta filed a petition for dissolution of marriage. She claimed the parties maintained a common law marriage, and sought a dissolution of the marriage.

During the time Roberta and Brett lived together following their divorce in 1990, they maintained separate bank accounts and consistently filed separate tax returns with the filing status designated as single or head of household. Some of Brett's employment records indicated he was married, while others reflected he was single or divorced. In 1999, Brett purchased a second home in Clarinda. The deed desig-

nated him as a single person and the mortgage designated him as an "unmarried" person. Brett also purchased several motor vehicles during the time the parties lived together, and held title in his name only. Brett declared himself married on the insurance policies for the vehicles. On one occasion in 2001 when Roberta was hospitalized, Brett declared himself to be her husband on a consent to treatment form. Roberta maintained individual credit cards, and in April 2001 designated herself as "divorced" on a retirement account document.

Roberta and Brett frequently presented themselves to the community as husband and wife. They were often addressed as "Mr. and Mrs." in mail they received at their home, and were normally introduced as "Mr. and Mrs." in various social settings and school events. Ashley always assumed her parents were married, and was surprised to learn in 2001 they were divorced. Overall, the parties tended to treat themselves as married when it was convenient or beneficial to do so, and, likewise, treated themselves as single or divorced when it was beneficial to do so.

Roberta and Brett both worked during the period of their cohabitation, and both contributed to the household expenses. Roberta was the primary caretaker of Ashley and assumed most of the general household responsibilities. At the time of trial, Roberta's annual income was $16,600 and Brett's annual income was $53,000. The money used to buy the two homes came exclusively from Brett's funds. Roberta apparently made no financial contribution towards the purchase of the homes, or the motor vehicles purchased by Brett.

The district court found Roberta failed to establish the existence of a common law marriage with Brett. Nevertheless, the court determined it was empowered to decide the issues of child custody and sup-

port, and had equitable authority to divide those assets of the parties accumulated during their cohabitation. It then entered a decree granting the parties joint custody of Ashley, with physical care to Roberta. Brett was ordered to pay child support and was given liberal visitation. The court divided the debts of the parties as well as the property, including the two parcels of real estate solely owned by Brett. Brett was awarded one home and Roberta was awarded the other home. Brett was also required to pay a portion of Roberta's attorney fees.

Brett filed a notice of appeal. He claimed the district court had no authority to award Roberta property he owned without first declaring the existence of a common law marriage. Likewise, he claimed the district court had no authority to order him to pay Roberta's attorney fees. Roberta claimed the district court erred in failing to find the existence of a common law marriage.

We transferred the case to the court of appeals. It held Roberta and Brett did not have a common law marriage. It further held that the district court had jurisdiction to divide the property and affirmed the award made by the district court. It reversed the award of attorney fees. Brett sought further review.

## II. Scope of Review.

■ We review claims of a common law marriage de novo. *See In re Marriage of Stogdill,* 428 N.W.2d 667, 669 (Iowa 1988).

## III. Common law Marriage.

### A. Background

■ Two forms of marriage are recognized in Iowa. One is ceremonial, governed by statute. *See generally* Iowa Code §§ 595.1–.21 (2003). This form of marriage was recognized in our first code

in 1851 and the requirements established then are essentially the same now. *See In re Estate of Stopps*, 244 Iowa 931, 933, 57 N.W.2d 221, 222 (1953). The second form of marriage is informal, known as a common law marriage. This type of marriage has been recognized in Iowa for well over a century. *In re Estate of Fisher*, 176 N.W.2d 801, 804 (Iowa 1970). Although a common law marriage is as valid as a ceremonial marriage, there is no public policy favoring this type of marriage.[1] *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979) [hereinafter *Winegard II* ]. Thus, claims of common law marriage are carefully scrutinized and the burden of proof rests with the party asserting the claim. *Id.; Fisher*, 176 N.W.2d at 804–05.

■ Three elements must exist to create a common law marriage: "(1) [present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." *Winegard II*, 278 N.W.2d at 510. All three elements must be shown to establish a common law marriage. *Id.*

### 1. Present Intent and Agreement.

■ The requirement of a present intent and agreement to be married reflects the contractual nature of marriage. *See Fisher*, 176 N.W.2d at 806 (marriage is a civil contract that requires the consent of the parties). However, an express agreement is not required. *See In re Marriage of Winegard*, 257 N.W.2d 609, 616 (Iowa 1977) [hereinafter *Winegard I* ]. An implied agreement may support a common law marriage where one party intends present marriage and the conduct of the other party reflects the same intent. *See*

*id.* (common law marriage may arise even if the other party's intent is not to be married). The conduct of the parties and their general community reputation is evidence that can be used to support a present intent and agreement. *Id.; Gammelgaard v. Gammelgaard*, 247 Iowa 979, 980, 77 N.W.2d 479, 480 (1956) (cohabitation, as well as conduct and general community reputation, can be used to strengthen proof of present intent and agreement to be married). The present-intent-to-be-married requirement precludes a common law marriage based on an intent to be married at some future time. *See State v. Grimes*, 215 Iowa 1287, 1289–90, 247 N.W. 664, 665 (1933) (agreement to live as husband and wife until lawfully married does not establish present intent to enter into marriage relationship).

### 2. Continuous Cohabitation.

■ Marriage is normally followed by cohabitation. *See Love v. Love*, 185 Iowa 930, 931–32, 171 N.W. 257, 257 (1919), overruled in part on other grounds by *In re Estate of Dallman*, 228 N.W.2d 187, 190 (Iowa 1975). Thus, continuous cohabitation is an element of common law marriage. Although it is circumstantial evidence of a common law marriage, it cannot alone establish a common law marriage. *Conklin by Johnson–Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102, 105 (Iowa Ct.App.1996). There is no particular time that cohabitation must exist to establish a common law marriage. *Love*, 185 Iowa at 931, 171 N.W. at 257. Instead, it is important for the cohabitation to be tied to the present intent and agreement to be married. *See In re Estate of*

---

**1.** At least one state recognizes a public policy that favors a common law marriage when parties resume living together following a divorce. *See In re Estate of Wagner*, 398 Pa.

531, 159 A.2d 495, 497–99 (1960). We are not asked to consider this approach in our resolution of this case.

*Wittick,* 164 Iowa 485, 493–94, 145 N.W. 913, 916–17 (1914).

### 3. Public Declaration.

 The public declaration or holding out to the public is considered to be the acid test of a common law marriage. *See Winegard I,* 257 N.W.2d at 616. This means there can be no secret common law marriage. *Id.* Yet, it does not mean that all public declarations must be entirely consistent with marriage. *See Fisher,* 176 N.W.2d at 806 (some inconsistent evidence noted); *In re Estate of Stodola,* 519 N.W.2d 97, 100 (Iowa Ct.App.1994) (the parties represented they were single or not married at times). A substantial holding out to the public in general is sufficient. *See Winegard I,* 257 N.W.2d at 616; *Conklin,* 557 N.W.2d at 105.

### B. Analysis.

 We turn to the evidence introduced at trial to determine if the three elements of a common law marriage were met in this case. This evidence reveals that Roberta and Brett lived together for a decade, except for a couple periods of separation, and held themselves out to the community on many occasions to be husband and wife. Various newspaper articles, employment newsletters, and other documents supported a community reputation of marriage. *See In re Marriage of Gebhardt,* 426 N.W.2d 651, 652 (Iowa Ct. App.1988). The appellation of "Mrs." frequently used before Roberta's name also was evidence of a general reputation of marriage. *See Fisher,* 176 N.W.2d at 805–06; *see also In re Estate of Clark,* 228 Iowa 75, 104, 290 N.W. 13, 27 (1940). Notwithstanding, there were other times that Roberta and Brett declared themselves to be single or divorced, and otherwise portrayed themselves to others in a manner inconsistent with marriage. The fluctuating status of their relationship was, from the beginning, largely based on personal convenience or benefit, which is inconsistent with the concept of marriage. Overall, there were many inconsistent public acts or declarations relating to the status of their relationship. This inconsistency undermines support for a present intent and agreement to be married.

The intention of the parties was perhaps best revealed when Brett refused Roberta's request to remarry in 1994. The discussion of the topic by the parties effectively revealed they had no agreement to be married at that time, and there was no consistent evidence that followed to show such an agreement and present intent to be married was subsequently formed. The incident in 1994 also undermined Roberta's claim that the present intent and agreement to be married existed at the time of the divorce. Although Roberta may have felt that she was married to Brett throughout their cohabitation, the facts and circumstances of the separation in 1994 clearly revealed that Brett considered the marriage dissolved and did not intend to get remarried. Brett's intent, expressed to Roberta, was that he was not in a marital relationship. There was no substantial evidence to show the parties later agreed to become married. Considering all the facts and circumstances, we conclude that Roberta failed to establish a common law marriage.

### IV. Division of Property.

 Brett does not challenge the provisions of the decree relating to child custody, support, visitation and other related issues. *See Metten v. Benge,* 366 N.W.2d 577, 579 (Iowa 1985) (a court of equity has power to determine issues of child custody and support between unmarried parents); *see also* Iowa Code §§ 252A.1–.25, 598B.101–.402, 600A.1–.10. Instead, he

claims the district court had no authority to divide the property of the parties absent a finding of a marriage.

■■■ Marriage is one theory that permits the property of one person to be divided or transferred to another person at the time of the divorce. *See* Iowa Code § 598.21(1) (upon dissolution of marriage, "the court shall divide the property of the parties"). However, the power of the court to divide property under laws relating to the dissolution of a marriage exists only in the event a marriage is dissolved. *See In re Marriage of Reed*, 226 N.W.2d 795, 796–97 (Iowa 1975). The rights and remedies of chapter 598—the laws governing divorce—are not otherwise available to unmarried persons, and the district court derives no authority from chapter 598 to divide property of unmarried persons.

■■■ The court also has no broad equitable powers to divide property accumulated by unmarried persons based on cohabitation. In *Slocum v. Hammond,* 346 N.W.2d 485, 490–91 (Iowa 1984), we expressed reservations about property claims arising from cohabitation by unmarried persons. Furthermore, we have previously rejected claims of rights based on cohabitation by unmarried persons in other areas. *See Laws v. Griep*, 332 N.W.2d 339, 340–41 (Iowa 1983) (denying unmarried cohabitant's claim of loss of consortium); *Baldwin v. Sullivan*, 201 Iowa 955, 957–61, 204 N.W. 420, 421–23 (1925) (denying unmarried cohabitant's claim for workers' compensation). If two people desire the benefits of the law derived from marriage, they need to get married or establish a common law marriage. Cohabitation, alone, is insufficient to invoke the authority of courts to resolve property claims.

■■■ Notwithstanding, courts do have authority to adjudicate property claims of unmarried persons who cohabitate. Persons who cohabitate tend to accumulate property and the rights of the persons to such property may become disputed when the cohabitation ends. We have previously held that courts have jurisdiction over such claims. *Metten,* 366 N.W.2d at 579–80. However, the parties must allege a recognized legal theory outside marriage to support the claim. We have previously discussed the potential theories to support property claims between unmarried cohabitants, including claims of contract, unjust enrichment, resulting trust, constructive trust, and joint venture. *See Slocum,* 346 N.W.2d at 491–95.

In this case, Roberta alleged no legal theory outside cohabitation to support a division of property. Moreover, the only real evidence introduced to establish her rights in Brett's property was based on the cohabitation and the nature of the relationship, as well as the performance of various household tasks, including the preparation of meals. This is not the type of evidence that gives rise to the acquisition of rights to property. There needs to be more evidence beyond the general circumstances of cohabitation between two adults.

We conclude the district court did not have authority to divide the property of the parties in a manner that gave one party rights in property of the other party. Accordingly, we modify the decree of the district court by striking those property provisions of the decree that awarded Roberta property owned by Brett. We remand the case to the district court for entry of an order transferring title to the property described in paragraph seven of the decree to Brett, and for other relief relating to the property provisions of the decree consistent with this opinion.

**V. Attorney Fees.**

■■■ Attorney fees to enable a party to prosecute or defend an action to estab-

lish and dissolve a common law marriage are allowable under section 598.11, as long as there is a fair presumption of the existence of a common law marriage, even if the court subsequently decrees that no such marriage existed. *Stogdill,* 428 N.W.2d at 671; *Winegard I,* 257 N.W.2d at 617–18. In this case, the original petition filed by Roberta requested attorney fees. Having made this request prior to the entry of the decree, the district court was authorized to make an allowance for attorney fees in the decree since the evidence established a fair presumption of a marriage. *See Thorn v. Kelley,* 257 Iowa 719, 725–26, 134 N.W.2d 545, 548 (1965) (award of attorney fees possible when divorce petition ultimately dismissed if sought under section 598.11). The lengthy period of cohabitation, together with the various public declarations of husband and wife, was circumstantial evidence that created a fair presumption of a common law marriage in this case. *Conklin,* 557 N.W.2d at 105. The district court properly awarded attorney fees.

## VI. Conclusion.

We vacate the decision of the court of appeals and affirm the decree of the district court as modified. We remand the case to the district court for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED AND REMANDED.**

All justices concur except LARSON, J., who takes no part.