# IN THE COURT OF APPEALS OF IOWA

No. 21-1863
Filed March 8, 2023

IN THE MATTER OF THE ESTATE OF DOUGLAS ALLAN ARCHIBALD, Deceased.

**HEATHER ELLEN WHITMAN,**
        Petitioner-Appellant,

**vs.**

**JENNIFER SUSAN ARCHIBALD,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

        Heather Whitman appeals from a district court ruling on her petition for declaratory judgment seeking to establish a common law marriage to Douglas Archibald. **AFFIRMED.**

        Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

        M. Victoria Cole of M. Victoria Cole Law Firm, P.C., Cedar Rapids, for appellee.

        Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ. Chicchelly, J., takes no part.

**VAITHESWARAN, Presiding Judge.**

Heather Whitman filed a petition in probate court seeking a declaration that "she [was] the common law spouse of the deceased, Douglas Allan Archibald." Archibald's daughter, as administrator of Archibald's estate, filed an answer and counterclaim. She alleged Archibald was "divorced and unmarried" at the time of his death and Whitman was no more than his "on and off girlfriend." She further alleged that she and her brother were the only heirs to the estate, Whitman took possession of property belonging to the estate, the estate suffered damages as a result, and the estate was entitled to additional attorney fees based on having to defend the action.

Following trial, the district court concluded there was no common law marriage between Whitman and Archibald. The court denied the declaratory judgment petition. The court awarded the estate $4962.48 on its counterclaim.

On appeal, Whitman only challenges the district court's conclusion that she failed to prove the existence of a common law marriage. Our review of the issue is de novo. *See In re Marriage of Martin*, 681 N.W.2d 612, 616 (Iowa 2004).

"Three elements must exist to create a common law marriage: '(1) [present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife.'" *Id.* at 617 (alterations in original) (quoting *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979)). The district court concluded Whitman met her burden of proving the second element—continuous cohabitation with Archibald "dating back to approximately December 2009." The court concluded she failed to prove the first and third elements.

The first element—present intent and agreement to be married—may be proved by evidence of "[t]he conduct of the parties and their general community reputation." *Id.* The district court found "inconsistent" evidence on this point. The court stated Whitman's "witnesses all testified that they thought [Whitman] and [Archibald] were married," yet Whitman and Archibald "executed numerous documents . . . holding themselves out as single parties." In the end, the court found the testimony of Whitman's witnesses was "completely undermined by" Whitman's concession that she "would have formalized [the marriage] if it would not have jeopardized her Medicaid eligibility." The district court's findings are supported by the record.

Whitman testified she "relied on Medicaid . . . to fill prescriptions and any type of therapist appointments." She spoke to Archibald about formalizing her relationship by obtaining a marriage license but found "a hindrance" in the form of her "medications and medical bills." She said "it just wasn't feasible." On further questioning, she twice affirmed that she would have married Archibald but for the effect on her Medicaid eligibility. Those admissions alone negated her claim of a present intent and agreement to enter into a marriage with Archibald. *See In re Marriage of O'Connor-Sherrets & Sherrets*, No. 08-0293, 2008 WL 4877763, at *2 (Iowa Ct. App. Nov. 13, 2008) (stating affidavit attesting to married status that was signed in order to obtain a family health insurance policy at no cost was signed "solely for personal benefit" and was not evidence of a common law marriage); *cf. In re Marriage of Baccam & Onmanivong*, No. 17-1252, 2018 WL 5850224, at *2 (Iowa Ct. App. Nov. 7, 2018) ("The acts of signing [an affidavit attesting to their marital status] and adding [the woman] to [the man's] health insurance policy

demonstrate both the elements of mutual agreement and public declaration."). When combined with references in Whitman's medical records to her "single" status as well as her tax filings as a single person, we conclude Whitman lacked a present intent and agreement to be married. *See, e.g.*, *Martin*, 681 N.W.2d at 618 (noting the parties at times "declared themselves to be single or divorced, and otherwise portrayed themselves to others in a manner inconsistent with marriage" and stating "[t]he fluctuating status of their relationship was, from the beginning, largely based on personal convenience or benefit, which is inconsistent with the concept of marriage"); *In re Est. of Soucek*, No. 99-1306, 2000 WL 1724874, at *1 (Iowa Ct. App. Nov. 20, 2000) (noting one party "filed his annual tax returns as a single taxpayer and claimed only himself as an exemption" and the other party did not list herself as a spouse on an application she filed).

The third element—a public declaration of marital status—"is considered to be the acid test of a common law marriage." *Martin*, 681 N.W.2d at 618 (internal citations omitted). The district court found "the only proof that" Whitman brought "to this notion of public declaration" was that "their circles of friends generally thought the couple was married, that [Archibald] referred to [Whitman] as his 'old lady' (not specifically as his 'wife'), that [Archibald] often wore a ring on his left ring finger along with three pictures of him showing the same, and two envelopes addressed by [the administrator's] daughter in approximately 2012 to 'Papa and Mema.'" The court found this evidence insufficient to establish a public declaration.

Whitman appears to argue the friends' testimony suffices to prove the element. But the friends' testimony could be taken in more ways than one and had to be considered in conjunction with Whitman's intent. For example, the "old lady"

reference did not necessarily mean "wife."  *See In re Est. of Malli*, 149 N.W.2d 155, 156 (Iowa 1967) (noting decedent sometimes referred to a woman "as the 'old lady' . . . and sometimes as 'my wife'" and affirming a conclusion that there was no common law marriage).  While another witness testified Whitman and Archibald wore rings and Whitman told her she was married to him, the witness was unaware of other references the couple made to being single, divorced, and boyfriend/girlfriend.  *See In re Marriage of Heide*, No. 22-0001, 2022 WL 5067201, at *4 (Iowa Ct. App. Oct. 5, 2022) (stating the wearing of rings did "not overcome the evidence" showing the absence of an intent to initiate a common law marriage).  Whitman's clearly expressed intent to remain single overrode the testimony of these and other witnesses.

Whitman further contends the court "focused primarily on the non-public declarations in the medical and governmental records."  Public or not, the documents reflected Whitman's intent and were appropriately considered in determining whether there was a common law marriage.  *See Coleman v. Graves*, 122 N.W.2d 853, 855 (Iowa 1963) (noting woman did not use decedent's last name on medical records and listed her occupation as housekeeper, not spouse, of the decedent).

On our de novo review, we agree with the district court that Whitman and Archibald did not have a common law marriage.

**AFFIRMED.**