**IN THE COURT OF APPEALS OF IOWA**

No. 23-1856
Filed October 30, 2024

**IN THE MATTER OF THE ESTATE OF JEFFREY D. NAGEL, Deceased.**

**LORI A. PAINTER,**
        Appellant,

**vs.**

**HALEY N. NAGEL, KALYB A. NAGEL, and BRITTYN S. NAGEL,**
        Beneficiaries-Appellees.
_____

        Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe,

Judge.


        Lori Painter appeals the district court's order denying her motion to

intervene and motion for appointment as co-administrator of the Estate of Jeffery

Nagel.  **AFFIRMED.**


        William H. Habhab, Fort Dodge, for appellant.

        Neven J. Mulholland, Fort Dodge, for appellees.


        Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Lori Painter appeals the district court's order denying her motion to intervene and motion for appointment as co-administrator of the Estate of Jeffery Nagel. Painter challenges the court's finding that she failed to prove she was Nagel's common-law wife. Upon our review, we affirm.

## I.   *Background Facts and Proceedings*

Nagel died intestate in 2020, following a work-related accident. His daughter, Haley, filed a petition for small estate administration, requesting to be named the personal representative of Nagel's estate. Haley's petition listed herself and her siblings, Kalyb and Brittyn, as Nagel's heirs. The district court entered an order appointing Haley as personal representative of the estate.

Lori Painter filed a motion to intervene, alleging to be "the common law wife of the Deceased." Painter claimed to be "a beneficiary of this estate under Iowa Code section 633.212" (2020), and she requested to "be appointed as a Co-administrator of the estate." Painter attached to her motion the following "Joint Affidavit Re: Common Law Marriage" signed by Painter and Nagel:



The estate filed an answer to the motion, denying Painter was Nagel's common law wife, denying Painter was a beneficiary of the estate, and resisting her request to be appointed co-administrator of the estate. The estate further claimed "the Joint Affidavit Re: Common Law Marriage is a sham executed only for the purpose of obtaining insurance coverage for [Painter], and that no other incidents required to establish a common law marriage exist."

The matter proceeded to trial, at which the court received exhibits and heard testimony from Painter; Linda Cloud (a former neighbor of Painter and Nagel); Amber Porter (Painter's daughter); Scott Otto (Nagel's friend); Robert Lambertsen (Nagel's coworker); DeeAnn Otto (Scott's wife and Nagel's coworker); Haley (Nagel's daughter); and Brittyn (Nagel's son). The evidence before the court reflected that Painter and Nagel began a relationship in Waterloo in 2002 or 2003. They eventually moved in together. They each had "some issues" and were both "[a]ddicted to methamphetamine." Later that year, Nagel reached out to Scott for help with his addiction, and then moved with his son to Scott's home in Fort Dodge. Nagel got sober and obtained a job with Scott's employer. In 2004, Nagel began renting a home in Fort Dodge, and the next year, Painter moved into the home with some of her children.

Over the years, Nagel and Painter separated several times. Painter moved back to the Waterloo area. In 2009 or 2010, Painter moved back to Nagel's home in Fort Dodge. At some point, Painter moved to the basement of Cloud's house next door. She eventually moved back in with Nagel, although the evidence indicates she periodically moved back to the Waterloo area. Nagel dated other women during these separations.

In 2014, Painter and Nagel moved into Cloud's house. Although Cloud testified she thought she was selling the home to them as a couple, the mortgage listed "Jeffery D. Nagel, a single person." Painter explained her absence from the mortgage was due to her lack of credit history. Painter testified she believed that would be their "forever home," and recalled that Nagel bought her flowers "all the time" and called her "his missus." Despite their separations, she stated Nagel had "always been my husband" since they met. Nagel's friends and family refuted Painter's testimony that she and Nagel were ever married.

The next few years were particularly tumultuous for Nagel. A battle with prostate cancer left him impotent. He failed alcohol and drug tests through his employer, and he was eventually terminated after he tested positive for opiates. Nagel became suicidal. In spring 2019, Painter and Nagel officially ended their relationship. Painter gathered her belongings and moved to Indiana.

In October 2020, Nagel sustained an injury at work when the truck he was driving rolled over. He spent a week in the hospital before passing away due to his injuries. Painter did not visit Nagel in the hospital, but she testified, "I said my goodbyes to him through the phone."[1]

Following trial, the court entered a decree finding Painter had "failed to prove that she was married by common law" to Nagel. Accordingly, the court denied Painter's motion to intervene and motion for appointment as co-administrator. Painter appeals.

---

[1] Nagel was on a ventilator prior to his death.

## II.     Standard of Review

Because this case was tried in equity, our review is de novo.  *In re Est. of Stodola*, 519 N.W.2d 97, 99 (Iowa Ct. App. 1994).  We give weight to the fact findings of the district court, especially when considering the credibility of witnesses, but are not bound by those determinations.  Iowa R. App. P. 6.904(3)(g).

## III.     Discussion

On appeal, Painter challenges the district court's conclusion that she failed to prove the existence of a common law marriage.  "[C]laims of common law marriage are carefully scrutinized and the burden of proof rests with the party asserting the claim."  *In re Marriage of Martin*, 681 N.W.2d 612, 617 (Iowa 2004).

### A.     Credibility of Witnesses

Preliminarily, Painter disputes the district court's findings that her testimony was not credible and the opposing witnesses were more credible.  Painter acknowledges she and "her witnesses and the Nagel children [and] their witnesses had vastly opposing views regarding the nature of [Nagel and Painter's] relationship" but argues the court had more cause to disbelieve the opposing witnesses; namely due to what Painter refers to as an "overwhelming amount of documentary evidence."  According to Painter, "[t]he court's findings of credibility are not consistent with the documents signed by [Nagel and Painter] from 2013 through 2019 clearly identifying each other as husband and wife."

In equity cases, although the district court's fact findings do not bind us, "we give them weight—especially those based on witness-credibility determinations." *In re Marriage of Nichols & Mauro*, No. 23-0767, 2024 WL 697752, at *3 (Iowa Ct.

App. Feb. 21, 2024); *accord* Iowa R. App. P. 6.904(3)(g). "This is because we—unlike the district court—are limited to reviewing the cold record and are thus 'denied the impression created by the demeanor of each and every witness.'" *Nichols & Mauro*, 2024 WL 697752, at *3 (quoting *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984)). At the outset of its order, the court made the following findings:

> The Court finds that [Painter]'s testimony lacked credibility. She frequently contradicted her own testimony. She was consistently unable to recall important dates. She refused to acknowledge unfavorable evidence even regarding declarations that she made under penalty of law. She often propounded improbable scenarios to explain unfavorable evidence. Her testimony was self-serving to the extreme. Her conduct was disrespectful requiring the Court to admonish her.
>
> Scott Otto, DeeAnn Otto, and Robert Lambertsen provided very credible testimony. They have no stake in the outcome of this trial. Their answers were straightforward and forthcoming. They admitted when they did not recall an event, but were consistent and certain on those matters they recalled. Their answers were succinct and not argumentative. The Court finds them to be the guideposts of the trial.
>
> The Court found the testimony of Amber Porter and Linda Cloud to be somewhat more reliable than [Painter]'s, but they also refused to acknowledge unfavorable facts and were often argumentative. They testified to support [Painter]. Their motives for their bias obviously differed, but their testimony was unpersuasive. The Court finds it impossible to rely on them on critical issues.
>
> The Court found Brittyn's and Haley's testimony to be convincing. Brittyn has an extensive criminal history which would normally make it difficult to believe him. However, he was candid and quite convincing. He readily acknowledged his criminal record and history of drug addiction. He gave no excuses for his conduct and readily admitted unfavorable evidence. His answers were concise and nonargumentative. He was candid and complimentary of [Painter]'s relationship with him. In summary, the Court was favorably impressed and found him to be quite believable.
>
> Similarly, the Court found Haley's testimony credible. She obviously has a great deal to gain if the Court rules against [Painter]. However, Haley was also responsive in her answers. She also admitted the good and the bad. She was not derogatory of [Painter]'s relationship with her family. Her evidence was consistent, heartfelt,

and concise. Her observations were consistent with undisputed evidence and depicted a convincing explanation of her father's tumultuous relationship with [Painter].

"Factual disputes that depend on the credibility of witnesses are best resolved by the district court." *In re Marriage of Baker*, No. 14-1293, 2015 WL 4163351, at *2 (Iowa Ct. App. July 9, 2015) (citing *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996)). Here, the district court saw and heard contradictory testimony from the parties, ultimately disbelieved Painter's testimony on key points, and further found it "impossible to rely on [Painter's witnesses] on critical issues." In making its findings, the court considered the witnesses' neutrality and motives, as well as their criminal records and history of drug addiction. *See id.* ("The court was aware of the witnesses' biases and criminal records in sorting through their different versions of events."). "Although our review is de novo, only in rare instances would we substitute our own credibility determinations for those of the district court." *Id.* We see nothing in this record that leads us to disagree with the district court's credibility determinations. *See In re Est. of Walters*, No. 18-0612, 2019 WL 2152578, at *2 (Iowa Ct. App. May 15, 2019) ("[W]e defer to the district court's credibility finding regarding the testimony." (citing *In re Est. of Bruene*, 350 N.W.2d 209, 211 (Iowa Ct. App. 1984))).

B.     Common Law Marriage

A party seeking to establish a common-law marriage has the burden to prove three elements: "(1) [present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." *Martin*, 681 N.W.2d at 617 (alterations in original) (quoting *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979)). Because Painter

must prove all three elements, we need not decide whether she has proven continuous habitation and instead focus on the first and third elements.

Present intent and agreement to be married may be proved by evidence of "[t]he conduct of the parties and their general community reputation." *Id.* At trial, most of the witnesses testified that Nagel—after three failed marriages—consistently declared "he was never going to get married again." The testimony in contrast was much weaker. For example, Painter's witness, Cloud, testified she "view[ed] them as a marital couple" because Nagel "would say, 'I wonder what the wifey is fixing for supper,'" and because when Cloud and her husband sold their home to Nagel, "In our minds, we were selling the home to them as a couple." We observe that Painter's own testimony belies her assertion that she believed the parties were married:

> Q. . . . How many times has Jeff been married prior to meeting you? A. I think four.
> Q. Okay. Four times. And over the years, did you and he discuss marriage? A. We did. . . . I figured he would ask me to marry him.
> Q. He didn't ask you? A. He did ask me.
> Q. He— A. He did. One day said, "Why don't we just go to the courthouse and get married?"
> Q. Why didn't you? A. We just didn't.
> Q. You didn't get married? Even though there was an opportunity, you chose not to get married for whatever reason; correct? A. No. I didn't choose not to get married, just didn't follow through. I didn't say "No, I'm not marrying you."
> Q. Well, you didn't get married? A. Right.
> Q. You talked about it and it didn't happen? A. Right.

Painter's main support for this element is the 2013 affidavit filed with Nagel's health insurance carrier.[2]  She relies on this court's opinion in *In re Estate of Stodola*, to support her claim.  In *Stodola*, we found a common law marriage existed where, along with the insurance-coverage affidavit—the parties cohabitated for twenty years, filed joint tax returns, registered as husband and wife at motels, and held themselves out as husband and wife at social events.  519 N.W.2d at 99.  The husband also designated the wife as his retirement-plan beneficiary and listed her as his common law wife on the documents.  *Id.*  Similar evidence supporting this element was not presented in this case.

The district court found Painter "has undermined this argument with testimony that the marriage predated the Affidavit."  Nagel's lifelong friend, Scott, provided the most plausible reasoning for the affidavit, stating Nagel "signed it simply so that she could have the insurance."  Specifically, Otto testified, "[Nagel] explained to me that he had signed this affidavit simply to get [Painter] health coverage because she had some both physical and mental issues she was dealing with and was unable to get health insurance on her own that would have been affordable.  He was helping her out."  Even Painter acknowledged the "purpose"

---

[2] Painter also points to "[m]ultiple documents" submitted to the court, including a Facebook post by Nagel in 2018, a medical power of attorney, a letter from Painter's life insurance policy, a 2017 income tax return, and "medical records." But these sources were rebutted by other, more reliable statements and documents in the record.  Our courts have recognized that "'fluctuating' actions and declarations about the relationship status 'largely based on personal convenience or benefit'" do not amount to the required present intent and agreement. *Nichols & Mauro*, 2024 WL 697752, at *3 (quoting *Martin*, 681 N.W.2d at 618).  "Such shifting conduct 'is inconsistent with the concept of marriage' and 'undermines support for a present intent and agreement to be married.'"  *Id.* (quoting *Martin*, 681 N.W.2d at 618).

of the affidavit was "to get [her] on a good insurance plan"; "He wanted me to have good insurance."

The district court addressed this issue, stating in part, "The *Sto[dola]* holding makes clear that the Court must examine the parties' intent when interpreting the impact of the Affidavit. . . . When the Affidavit is placed in the context of other credible evidence, it is not convincing evidence of the decedent's present intent to be married." The court's findings are supported by the record. *See Shane v. Walters*, No. 22-0565, 2022 WL 17829360, at *2 (Iowa Ct. App. Dec. 21, 2022) ("Aside from the affidavit, none of those indicia [in *Stodola*] are present in this case."); *In re Marriage of O'Connor-Sherrets & Sherrets*, No. 08-0293, 2008 WL 4877763, at *2 (Iowa Ct. App. Nov. 3, 2008) ("In contrast to the *Stodola* facts, there was little, if any, evidence that Judith and Larry ever claimed to be married either prior to or subsequent to the signing of the affidavit.").

Even assuming the parties had the requisite present intent and agreement, they must also hold themselves out as married to the public. "[T]here can be no secret common law marriage." *Martin*, 681 N.W.2d at 618. Here, Painter presented no consistent evidence that the parties held themselves out as husband and wife. She relies on most of the same evidence to prove both the present-intent-and-agreement and public-declaration elements. As the district court acknowledged, some of her exhibits represented the parties as married. However, we concur with the court that most of the evidence "demonstrates that both parties often changed their descriptions of their relationship."

For example, when Painter was questioned why she represented to the Department of Human Services in 2014 that she "lived with [her] friend, Jeff Nagel,"

Painter acknowledged calling Nagel her friend but explained, "I consider him my husband," "I [just] didn't say that." Similarly, when questioned why her medical records noted, "[Painter] identifies that her boyfriend is 17 years as an alcoholic. She feels that she cannot communicate with him," she acknowledged calling Nagel her boyfriend but responded, "I mean I should have said husband. . . . At the time he was my husband."

Painter further agreed the record contained "various [documents accumulated] over the course of years" in which she referenced Nagel as her "boyfriend," "roommate," "ex-common-law husband," "non-relative," "live-in boyfriend," "partner," and "current housemate." She also referenced herself as "single" in many of these documents. This evidence does not establish the substantial "public declaration or holding out to the public" that is the "acid test of a common law marriage." *Id.*; *accord Shane*, 2022 WL 1789360, at *2 ("Evidence that the parties held themselves out as husband and wife is thin. While the parties made occasional reference to each other as husband or wife, the greater weight of evidence at trial proved most third parties understood Walters and Shane were not married.").

In sum, although "some of the record evidence cuts both ways, we cannot disagree with the district court's finding that [Painter] did not carry [her] burden to prove a common law marriage." *Shane*, 2022 WL 1789360, at *2; *accord In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009) (affirming on de novo review after giving appropriate deference to the district court's firsthand view of the witnesses at trial, despite some conflicting evidence). We affirm the district

court's order denying Painter's motion to intervene and motion for appointment as co-administrator of the Estate of Jeffery Nagel.

**AFFIRMED.**