# IN THE COURT OF APPEALS OF IOWA

No. 24-1394
Filed July 2, 2025

**ALEX M. TAYLOR,**
        Plaintiff-Appellant,

**vs.**

**AMANDA A. HERGENRETER,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe, Judge.

        Alex Taylor appeals the decree establishing paternity, custody, visitation, and support of the child he shares with Amanda Hergenreter. **AFFIRMED IN PART, MODIFIED IN PART, AND REVERSED IN PART.**

        Dani L. Eisentrager of Eisentrager Law Office, Eagle Grove, for appellant.

        Amy K. Davis of Miller, Zimmerman & Evans, P.L.C., Des Moines, for appellee.

        Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Alex Taylor appeals the decree establishing paternity, custody, visitation, and support of J.T., the child he shares with Amanda Hergenreter. He challenges the award of past child support, past cash medical support, and one-half of an income tax refund, and he contends the district court abused its discretion by declining to award him trial attorney fees. Both parties request an award of appellate attorney fees. We affirm the award of past child support as modified, affirm the award of past cash medical support, reverse the award of one-half of the income tax refund, and affirm the denial of trial attorney fees. We decline to award either party appellate attorney fees.

**I. Background Facts and Proceedings.**

Alex and Amanda were in a relationship from 2014 through 2018. They began cohabiting in 2015, the same year J.T. was born. Alex also has custody of T.T., a child from a prior relationship. Although Alex and Amanda have never been married, they filed their 2017 and 2018 tax returns as married filing jointly.

The parties' relationship ended in late 2018. Amanda was J.T.'s primary caretaker after she moved out, and Alex provided care for J.T. about 25% of the time. Alex provided for J.T.'s needs when the child was in his care but only gave Amanda money for J.T.'s support if asked. After separating, Alex received a $8477 refund from the parties' 2018 federal tax return. Despite Amanda's request, Alex never shared the refund.

In 2023, Alex petitioned to establish paternity,[1] custody, visitation, and support of the child. The court entered a temporary order for joint legal custody and joint physical care, with the parties alternating physical care weekly. Because Alex's and Amanda's net monthly incomes were roughly equal, the court did not order temporary child support.

After a May 2024 trial, the court asked the parties to submit their requested relief.[2] Amanda asked the court to award her $29,619.57 in past child support, the amount she calculated that Alex would have paid that amount of child support under the child support guidelines based on their annual earnings for each year following their separation.[3] Amanda also asked the court to order that Alex pay her past cash medical support and one-half of the parties' 2018 federal income tax refund.

In a decree entered in July 2024, the district court established Alex as J.T.'s father and amended his birth certificate accordingly. As in the temporary order, the court granted the parties joint legal custody and joint physical care. It ordered Alex to pay Amanda past child support of $29,619.57 and to pay the Iowa Department of Health and Human Services past cash medical support of $11,496.38. Because Amanda's earnings increased from 2023, the court ordered

---

[1] Although there is no dispute that Alex is J.T.'s father, he was not listed on the birth certificate due to what the district court described as "a documentation and notarization problem."

[2] Alex moved to strike Amanda's requested relief as untimely because it was filed one week after the deadline given by the court. The district court denied the motion, noting that it had suggested it would be flexible with the deadline.

[3] Amanda calculated past child support of $656 for November and December 2018, $3636 for 2019, $6154.20 for 2020, $6628.56 for 2021, $8147.76 for 2022, and $4397.05 for the months of 2023 before the court entered the temporary order.

her to pay $118 per month in child support to Alex under the child support guidelines. It also ordered that Alex pay one-half of the parties 2018 federal tax refund to Amanda. The court declined to award either party trial attorney fees.

**II. Discussion.**

Alex challenges the awards of past child support, cash medical support, and the 2018 tax refund. He also challenges the denial of trial attorney fees. Both parties request appellate attorney fees.

We review matters of child custody and support de novo. *See Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). On de novo review, we examine the entire record before us and decide anew the issues presented on appeal. *Id.* at 5. We give weight to the district court's factual findings, especially those involving witness credibility, but we are not bound by them. *Id.*

**A. Past child support.**

Alex first contends the district court erred by awarding Amanda $29,619.57 in past child support. He first argues against the award based on the doctrines of laches and estoppel. Amanda notes that Alex raises this claim for the first time on appeal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Thus, he preserved no error for our review. But regardless, the supreme court soundly rejected similar arguments in *Markey v. Carney*, 705 N.W.2d 13, 21–24 (Iowa 2005) (rejecting a father's arguments that the doctrines of estoppel by acquiescence and laches prevented a mother who waited nearly six years to file paternity action from recovering past child support).

Alex also challenges using the child support guidelines to calculate past child support. He argues the award is not equitable because it does not account for any support he paid during the separation. He also contests the past child support awarded for 2018 based on the parties' testimony that they separated in December 2018.

The legislature has determined that unmarried parents owe their children "necessary maintenance, education, and support." Iowa Code § 600B.1 (2023). "The mother may recover from the father a reasonable share of the necessary support of the child." *Id.* § 600B.2. Once paternity is established in an action brought under Iowa Code section 600B.24, the court can "order the father to pay amounts the court deems appropriate for the past support and maintenance of the child." *Id.* § 600B.25(1).

Although the court need not use the child support guidelines to calculate past child support, the supreme court has stated an appropriate starting point is "the amount of support that would have been paid under the guidelines if no delay had occurred."[4] *Markey*, 705 N.W.2d at 24 (noting that "the guideline amount is

---

[4] Although Amanda calculated the amount of past child support based on each party's annual income from all sources each year since separating, a strict application of the guideline is not required. Following *Markey*, this court in *Slade v. Fougner*, No. 09-0015, 2010 WL 788695, at *3 (Iowa Ct. App. Mar. 10, 2010), evaluated the district court's determination that the father would have owed more than $60,000 in child support over ten years based on the child support guidelines. Rather than calculating the precise amount of support owed during that decade, the district court began by determining the father's current obligation under the guidelines as a percentage of his current earnings. *Slade*, 2010 WL 788695, at *3. It then applied that percentage to each year the father's prior annual earnings. *Id.* In approving of this method, this court found that the father would have owed a greater amount if "strict guideline percentages applied" for the prior years and noted that the court did not impose any sum representing interest for lost use of the unpaid arrearage. *Id.* Because any deviation from the child support guidelines

based on the usual needs of a child and the ability of parents to contribute to those needs under normal circumstances"). "[T]he decision by the legislature not to use the guidelines to set past child support does not mean the guidelines become irrelevant." *Id.* But the court acknowledged that circumstances occur over time "that must be considered in deciding if it is equitable for a parent to pay an amount of past child support that is less than the total sum that should have been paid without the delay." *Id.* Applying *Markey*, we ask two questions: (1) did the court correctly determine the total amount of support Alex would have paid under the guidelines between the time the parties separated and the entry of the temporary support order, and (2) do the circumstances warrant decreasing that amount? *See id.*

On whether the court properly calculated the amount of past support due under the guidelines, Alex only challenges the support assessed for November and December 2018. On this issue, the court found, "[Amanda] testified that the parties separated in October 2018." But on our de novo review, we find both parties agreed that they separated in December 2018.[5] Because the parties lived together until December 2018 and Amanda waived her request for past child support during the time they lived together, we subtract the $656 awarded for those months from the total award of past child support. Doing so lowers the total award of past child support to $28,963.57.

---

benefited the father, we concluded the court's calculation was "fair, reasonable, and based on rational computation." *Id.*

[5] Alex testified that Amanda moved out in December 2018. Amanda testified that she lived with Alex "from June 2015 to about December 2018."

We turn then to whether any circumstances that occurred while the parties were separated warrant decreasing the amount of support that Alex would have paid under the guidelines if that amount had been paid without delay. Alex argues that he will be charged twice if required to pay Amanda for support because he contributed to J.T.'s support during the separation. In cases applying *Markey*, we have found it equitable to subtract past support paid to the physical caregiver from the total amount of past child support that would have been owed under the guidelines. *See, e.g.*, *Harris v. Smith*, No. 23-1966, 2025 WL 52838, at *4 (Iowa Ct. App. Jan. 9, 2025) (subtracting the $8770 in payments the father made to the mother before the temporary child support order from the $21,600 the court calculated would have been owed under the child support guidelines); *Skaggs v. Carson*, No. 22-0175, 2022 WL 17481854, at *4 (Iowa Ct. App. Dec. 7, 2022) (calculating the amount of the child support the father would have paid under the guidelines by multiplying his monthly obligation under the temporary support order by the number of months he did not pay support before the order, and awarding past child support in a lesser amount to acknowledge expenses paid by the father and his family). The problem with crediting Alex for any financial support he paid before the temporary support order is an evidentiary one. *See Skaggs*, 2022 WL 17481854, at *4 (considering "the various expenses [the father] and his family incurred as shown in the various receipts provided to the court"). Alex was asked about his contributions during cross-examination:

> Q. . . . Have you ever paid child support as it relates to [J.T.]?
> A. No.
> Q. And other than your own household expenses when he has been in your care, have you paid any financial support to Amanda? A. Yes.

Q. And how much financial support have you paid?  A. I don't know off the top of my head.

He acknowledged that he and Amanda only exchanged money via requests made on Facebook Messenger.  The transcript of those requests shows that he paid Amanda a total of about $800.  Alex conceded that Amanda did not ask him to contribute to many of J.T.'s expenses, like tuition, school supplies, clothing, food, treats for his school, sporting activities, and "all sorts of things."  He also admitted that he provided no assistance with Amanda's household expenses.  Apparently, most of what Alex considers to be financial support relates to the expenses he incurred while J.T. was in his care.  But a noncustodial parent's expenses are paid in addition to child support rather than credited as child support.  *See In re Marriage of Beecher*, 582 N.W.2d 510, 514 (Iowa 1998) (noting that child support guidelines "already take into consideration the reasonable living expenses of the non-custodial parent" and do not justify departing from them).  Crediting Alex for the $800 financial support he provided Amanda after separation, further reduces the total award for past child support to $28,163.57.  We therefore modify the decree to award Amanda $28,163.57 in past child support.

**B. Past cash medical support.**

Alex also contests the requirement that he pay $11,496.38 in past cash medical support to the Iowa Department of Health and Human Services.  He argues that he need not pay cash medical support under Iowa Code section 252E.1A(4)(c)[6] because he resided with T.T., who was receiving Title XIX

---

[6] Although the exception in section 252E.1A(4)(c) is cited, subsection (4) applies only if "a health benefit plan other than public coverage is not available to either parent at the time of the entry of the order, and the custodial parent does not have

assistance, and no health insurance was available at reasonable cost. Alex raised this issue in his motion to enlarge or amend the decree, attaching proof of T.T.'s coverage under Title XIX. The district court denied this portion of Alex's motion, noting that the evidence submitted with it was not provided at trial and could not be considered.

Alex argues that he preserved error on this issue. He notes that he testified at trial that T.T. had insurance coverage through Title XIX and argues that the documentation attached to his motion only confirmed the testimony already in the record.

> Q. How long have you provided insurance for [J.T]? A. Since the temp order.
> Q. Do you have [T.T] on your insurance also? A. Not through [my employer].
> Q. Why not? A. [T.T] qualifies for the Iowa Total Care and so I have him on that, and I pay a monthly fee for that.
> Q. And what is that monthly fee? A. $20.
> Q. But the only child covered through your employment insurance is [J.T]? A. Yes.

Assuming that error was preserved, the exception under Iowa Code section 252E.1A(4)(c) does not apply. At trial, Alex introduced into evidence a letter dated May 30, 2023, that confirmed his health, dental, and vision insurance coverage through his employer and the cost of adding children to the plan. The letter states, "To clarify, there would not be an additional cost to add more than

---

public coverage for the child." As a matter of clarification, Alex is arguing to apply the provision of section 252E.1A(5), which states that the noncustodial parent must pay cash medical support when the custodial parent has public coverage for the child "unless an exception under subsection 4 applies." If public assistance is provided by the Iowa Department of Health and Human Services on behalf of the child, any medical support arrearages owed to or on behalf of the child are assigned to the department. *See* Iowa Code § 600B.38(1); *see also id.* § 252E.11.

one child to the Employee + Child(ren) plan." On cross-examination, Amanda's attorney asked Alex about adding T.T. to this insurance plan:

> Q. Have you added [T.T] to your health insurance plan? A. No, I have not.
> Q. He's remained on Hawk I; is that correct? A. Yes.
> Q. Why has [T.T] remained on Hawk I despite the fact you have health insurance available to you at a reasonable rate? A. I guess I never realized it wouldn't cost anything extra to put him on there.
> Q. But this document's been in your possession since at least May of 2023; correct? A. Yes.

Because insurance was available for T.T. at no extra cost, section 252E.1A(4)(c) does not apply.[7] We affirm the award of $11,496.38 in past cash medical support.[8]

**C. 2018 tax refund.**

In her posttrial request for relief, Amanda asked the court to order Alex to pay her one-half of the parties' 2018 federal income tax refund. Alex resisted, arguing there was no basis awarding that relief in a custody action. The district court found that Alex agreed to pay Amanda one-half of the refund during his trial testimony and ordered him to do so. On appeal, Alex argues the district court exceeded its authority in dividing property.

Alex filed this action to establish paternity, custody, and support under chapter 600B. In an amended answer, Amanda asked for past medical expenses, past support, and reasonable attorney fees. She did not request one-half of the

---

[7] Alex began working for his current employer in 2020. The record is silent as to the availability of insurance before then.

[8] The Iowa Department of Health and Human Services was not a party to these proceedings and did not file documentation of the amount of past medical support. Amanda did not request cash medical support until her posttrial request for relief, and our record does not contain information on how the amount was calculated. But Alex does not challenge the amount of the award, only his obligation to pay this judgment to the State.

2018 federal income tax refund until she submitted a posttrial request for relief. That request did not allege any legal theory for recovery.

"The court also has no broad equitable powers to divide property accumulated by unmarried persons based on cohabitation." *In re Marriage of Martin*, 681 N.W.2d 612, 619 (Iowa 2004). The provisions of section 598.21 apply to those who marry or establish a common law marriage, not those who cohabit. *Id.* But courts do have the power to adjudicate property claims of unmarried persons who cohabitate based on other legal theories like contract, unjust enrichment, resulting trust, constructive trust, and joint venture. *Id.* Because Amanda never raised a legal theory that would provide subject matter jurisdiction, the court had no authority to adjudicate the issue. *See Blanchard v. Houdek*, No. 11-0057, 2011 WL 6664975, at *3 (Iowa Ct. App. Dec. 21, 2011) (affirming a ruling that declined to address request to divide parties' property based on cohabitation in action deciding child custody, support, and visitation because the appellant never raised an alternative legal basis for division); *cf. Metten v. Benge*, 366 N.W.2d 577, 579–80 (Iowa 1985) (affirming decree dividing property and deciding issues of child custody and support in an equity action between unmarried cohabitants where the amended petition sought relief under the court's general equity powers and respondent never alleged the statement of claims was an inadequate pleading). We reverse the award of one-half of the parties' 2018 income tax refund.

### D. Trial attorney fees.

Alex contends the district court abused its discretion by declining to award him trial attorney fees. *See Markey*, 705 N.W.2d at 25 (stating that "the decision

to award attorney fees rests within the sound discretion of the court, and we will not disturb its decision absent a finding of abuse of discretion" (cleaned up)). The court has the power to award the prevailing party in an action to determine custody or visitation reasonable attorney fees. Iowa Code § 600B.26. In determining whether to award attorney fees, the court should also consider the parties' abilities to pay. *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). Because we find no abuse of discretion, we affirm the district court's refusal to award trial attorney fees.

### E. Appellate attorney fees.

Finally, both parties request an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). We also consider if a party had to defend the district court's decision. *Id.* After considering these factors, we decline to award appellate attorney fees.

### III. Conclusion.

We modify the decree to award Amanda $28,163.57 in past child support. We affirm the award of past cash medical support. Because the court exceeded its authority, we reverse the award of one-half of the parties' 2018 income tax refund to Amanda. Finally, we affirm the denial of trial attorney fees and decline to award appellate attorney fees.

**AFFIRMED IN PART, MODIFIED IN PART, AND REVERSED IN PART.**